XXX

2013CI14897 -P00001
Filed
13 September 6 P3:56
Donna Kay McKinney
District Clerk
Bexar District
Accepted by:
Monica Hernandez

| | | |
|---|---|---|
| INNOVA HOSPITAL SAN ANTONIO, L.P. | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | |
| VS. | § | BEXAR COUNTY, TEXAS |
| | § | |
| HUMANA  INSURANCE COMPANY | § | |
| and | § | |
| HUMANA HEALTH PLAN OF TEXAS, INC. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

The Plaintiff in this lawsuit, INNOVA HOSPITAL SAN ANTONIO, L.P. ("PLAINTIFF" or simply "HOSPITAL"), is a "Preferred Provider" in a Preferred Provider Organization ("PPO"), which is known as the Three Rivers Provider Network ("TRPN"); and the HOSPITAL brings this lawsuit seeking:

    a.  Judicial declarations, pursuant to TEX. CIV. PROC. & REM. CODE Chapter 37, that the HOSPITAL does not owe refunds to either an insurance company (i.e., Defendant Humana Insurance Company) or a health maintenance organization (i.e., the Defendant Humana Health Plan of Texas, Inc.) for any alleged overpayment(s) those Defendants allege they made to the HOSPITAL, on the HOSPITAL'S claims for treating patients who were covered / insured by the insurance company and / or the health maintenance organization; and

    b.  A judgment awarding the HOSPITAL'S monetary awards from the insurance company and health maintenance organization, for the amounts those Defendants still owe to the HOSPITAL on *under paid* claims and *late* paid claims for treating patients who were insured / covered by those Defendants.

Consequently, this lawsuit involves disputes over the **amounts of payments** which the insurance company and the health maintenance organization ("HMO") were obligated to make to the HOSPITAL (i.e., a PREFERRED PROVIDER in a PPO) under the applicable managed care contracts (i.e., questions about the appropriate *rates* of payment); as opposed to disputes about whether or not a particular patient, service or course of treatment was covered under any insurance policies or health plans (i.e., **not** questions about *coverage*).

Document scanned as filed.

Sometimes in this pleading Defendant HUMANA INSURANCE CO. and Defendant HUMANA HEALTH PLAN will be referred to, collectively, as "HUMANA"; and, for causes of action against both of those Defendants the PLAINTIFF will show:

## DISCOVERY

1.     Discovery in this cause will be conducted under Level 3, pursuant to Rule 190.4 of the TEXAS RULES OF CIVIL PROCEDURE.

## PARTIES

2.     Plaintiff is Texas Hospital maintaining a regular office and place of business in San Antonio, Bexar County, Texas.

3.     Defendant HUMANA INSURANCE COMPANY is a foreign corporation engaged in the business of insurance in the state of Texas; and this Defendant is believed to be doing business in the state of Texas by reason of a certificate of authority from the Texas Department of Insurance (sometimes referred to simply as "TDI"). The registered agent for service of process upon Defendant HUMANA INSURANCE COMPANY is:

**Corporation Service Company**
**211 East 7th Street, Suite 620,**
**Austin, Travis County, Texas**
**78701 -3218.**

4.     Defendant HUMANA HEALTH PLAN OF TEXAS, INC. is a Texas corporation, engaged in the business of insurance in the state of Texas; and is doing business in the state of Texas by reason of a certificate of authority from the TDI. The registered agent for service of process upon Defendant HUMANA HEALTH PLAN OF TEXAS, INC. is:

**Corporation Service Company**
**211 East 7th Street, Suite 620,**
**Austin, Travis County, Texas**
**78701 -3218**

2

## JURISDICTION AND VENUE

5.　　This Court has jurisdiction to adjudicate this dispute and enter the Declaratory Judgment herein sought; and, therefore, this Court has jurisdiction to award all relief prayed for herein.

6.　　Venue is proper in Bexar County, Texas because Bexar County is where all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, pursuant to §15.002 of V. T.C.A. Civ. Prac. & Rem. Code; and, specifically, Bexar County Texas is where:

a. The Plaintiff / HOSPITAL entered into the Three Rivers Provider Network Agreement with Three Rivers Provider Network, Inc., which established the amount of money which the HOSPITAL should have been paid for treating HUMANA's insured members (i.e., operative facts in this lawsuit);

b. The Plaintiff / HOSPITAL provided the health care to HUMANA's insured members (i.e., operative facts in this lawsuit); and

c. HUMANA was obligated to make payments to the Plaintiff / HOSPITAL for the health care which it provided to HUMANA's insured members (i.e., operative facts in this lawsuit).

## AGENCY

7.　　Any time it is alleged in this pleading that Defendants did an act or failed to do any act or thing, it is meant that Defendants' authorized, apparent or ostensible agents, employees or representatives did such act or failed to do such act or thing, thereby making Defendants liable under the doctrine of respondeat superior.

## CONDITIONS PRECEDENT

8.　　All conditions precedent to file this action and recover the relief sought have occurred or are excused; and, specifically, the Plaintiff will show that Defendants have received written notice of these claims, in accordance with:

a. Chapter 541, *et seq* of the TEXAS INSURANCE CODE;

b. Chapter 37 of the TEXAS CIVIL PRACTICES & REMEDIES CODE;

c. Chapter 38 of the TEXAS CIVIL PRACTICES & REMEDIES CODE; and

d. All other applicable laws.

3

9.     Plaintiff will also show that it has exhausted all administrative remedies and applicable appeal requirements provided for in all relevant contracts, agreements, health plans and policies of insurance. Similarly, all attempts to resolve these claims and disputes prior to filing this law suit have been exhausted and / or are excused, making this lawsuit necessary in order to seek an judicial adjudication of the disputes and force Defendants to abide by / comply with the terms of the controlling contracts, the benefits of which the Plaintiff seeks in this proceeding.

### OVERVIEW OF HEALTH CARE INDUSTRY IN TEXAS

10.     It is customary in the health care industry (the "Industry") for insurance companies, health plans, health maintenance organizations ("HMO"), third party administrators ("TPA"), municipalities and other big employers (collectively referred to, in the Industry, as "PAYORS") to enter into contracts with PREFERRED PROVIDER ORGANIZATIONS ("PPO's") in order to contractually arrange for hospitals and doctors to provide the medical care and hospital services and treatment of individuals who are entitled to health care benefits ("health coverage" or simply "coverage") pursuant to / under policies of health insurance or health plans underwritten or sponsored by the insurance companies, HMO's, and other PAYORS. Individuals with such *health coverage* are often referred to in the Industry as "insured members" or "covered individuals"; and the contracts among PAYORS (e.g., insurance companies, HMO's, health plans, etc.) and PREFERRED PROVIDER ORGANIZATIONS ("PPO's") are often referred to as "SUBSCRIBER SERVICES AGREEMENTS."

11.     Although PREFERRED PROVIDER ORGANIZATIONS (PPO's ) also sometimes perform (or arrange for) various claims processing services and utilization review functions for PAYORS as part of the SUBSCRIBER SERVICES AGREEMENTS they enter into with PPO's, the primary reason the insurance companies, health maintenance organizations and other PAYORS enter into SUBSCRIBER SERVICES AGREEMENTS with PREFERRED PROVIDER ORGANIZATIONS is because the PPO can provide networks of hospitals and doctors willing and able to treat the insured members / covered individuals who the insurance companies and health maintenance

4

organizations are obligated to provide health coverage for; and the PREFERRED PROVIDER ORGANIZATIONS can provide those networks of hospitals and doctors by reason of the fact that the PREFERRED PROVIDER ORGANIZATIONS enter into contracts with numerous hospitals and doctors, whereby those hospitals and doctors contractually agree to admit and care for those individuals who are insured / covered by insurance companies, HMOs, and other PAYORS ("insured members"), in consideration for promises of:

> Prompt, but discounted, payments of the hospitals' claims for treating those covered individuals; and

> Fair claims processing, in compliance with Texas law, by the insurance companies, health maintenance organizations and other PAYORS (and by the claims processing agents of those PAYORS).

These contracts which PREFERRED PROVIDER ORGANIZATIONS enter into with hospitals (i.e., whereby the hospitals promise to admit and care for covered individuals in consideration for promises of prompt, but discounted, payments of the hospitals' claims), are often referred to as "PREFERRED PROVIDER AGREEMENTS" or PARTICIPATING PROVIDER AGREEMENTS." Furthermore, the hospitals and doctors which / who enter into PREFERRED PROVIDER AGREEMENTS with PPO's are often collectively referred to as "PREFERRED PROVIDERS" or "PARTICIPATING PROVIDERS"; and it is significant that the *primary* incentive or consideration motivating these hospitals to enter into such PREFERRED PROVIDER AGREEMENTS with PPO's are the contractual promises and assurances of the insurance companies and health maintenance organizations of both:

> Prompt, but discounted, payments of the hospitals' claims for treating those insured members of insurance companies and HMO's; and

> Fair claims processing, in compliance with Texas law, by the insurance companies and HMO's (and by the claims processing / paying agents of those PAYORS).

### FACTUAL BACKGROUND

12. At all times material to this lawsuit, Plaintiff owned, and was licensed by the TEXAS DEPARTMENT OF HEALTH SERVICES to operate (and did operate), a hospital is Bexar County, Texas known as "INNOVA HOSPITAL SAN ANTONIO" or sometimes simply "INNOVA Hospital".

5

13.     At all times material to this lawsuit, Defendants HUMANA INSURANCE COMPANY and HUMANA HEALTH PLAN OF TEXAS, INC. engaged in for profit commercial enterprises and marketing schemes by which HUMANA INSURANCE COMPANY and HUMANA HEALTH PLAN OF TEXAS, INC. derived profits off of Texas citizens, and businesses located within the state of Texas, by engaging in the following insurance business activities within the state of Texas:

a.  Soliciting Texas businesses / employers and citizens of Texas to become "insured members", "policy holders", and / or "enrollees" of group insurance policies, health plans, and health maintenance organizations ("HMO's") issued, operated, administered or underwritten by HUMANA INSURANCE COMPANY and / or HUMANA HEALTH PLAN OF TEXAS, INC. within the state of Texas (hereinafter collectively referred to as "HUMANA HEALTH PLANS AND POLICIES").

b.  Promising Texas businesses / employers who become "Subscribers" to the HUMAN health plans and policies (i.e., and thereby pay agree to pay premiums and / or fees to HUMAN) that HUMAN will act as their duly authorized agents to both: (i) provide hospitals with verifications of health policy / plan coverage information for specific patients and insured members under the applicable HUMAN health plans and policies (i.e., upon those patients' presentment at hospitals for treatment); and (ii) to subsequently adjust and pay the hospital's health care reimbursement claims for treating those patients / insured members who are treated by such hospitals) owed by HUMAN.

c.  Soliciting Texas hospitals (e.g., like the Plaintiff in this case) and other health care providers to agree to provide necessary medical and hospital care and treatment to insured members of the various HUMAN health plans and policies, when ever those insured members are admitted to hospitals for treatment.

d.  Promising Texas hospitals (e.g., like the Plaintiff in this case), which agree to become PREFERRED PROVIDERS in various PPO's, prompt and accurate verifications of coverage for specific patients / insured members who are covered under HUMAN health plans and policies, when those insured members show up at the hospitals for treatment.

e.  Promising Texas hospitals (e.g., like the Plaintiff in this case) which agree to become PREFERRED PROVIDERS in various PPO, prompt and Texas Insurance Code compliant claims processing, payment and handling (i.e., of health care claims for treating insured members of various HUMAN health plans and policies).

6

15.     At all times material to this lawsuit, Defendant HUMANA INSURANCE COMPANY was licensed by TDI to write Health Insurance in the state of Texas; and was obligated to comply with the TEXAS PROMPT PAY STATUTES, including Chapter 1301 of the TEX. INS. CODE.[1]

16.     At all times material to this lawsuit, Defendant HUMANA HEALTH PLAN OF TEXAS, INC. was licensed to be a Basic Health Maintenance Organization ("HMO") by the TEXAS DEPARTMENT OF INSURANCE, with authority to provide *Health Maintenance Services* in the state of Texas; and was obligated to comply with the TEXAS PROMPT PAY STATUTES, including Chapter 843 of the TEX. INS. CODE.[2]

17.     Prior to 2007, Three Rivers Provider Network, Inc. was authorized by the TDI to operate a PREFERRED PROVIDER ORGANIZATION ("PPO") in Texas; and, pursuant to that authority Three Rivers Provider Network, Inc. operated a PPO known as the "Three Rivers Provider Network" ("TRPN").

18.     In 2007, the HOSPITAL was induced to became a PREFERRED PROVIDER in the PREFERRED PROVIDER ORGANIZATION ("PPO") known as the Three Rivers Provider Network ("TRPN"), when the HOSPITAL and Three Rivers Provider Network, Inc. both signed a PREFERRED PROVIDER AGREEMENT titled the "Three Rivers Provider Network Agreement", which became effective on February 14, 2007; and in this

---

[1] By way of example, but not by way of limitation, HUMANA INSURANCE COMPANY has been previously subjected to the jurisdiction and supervision by the TEXAS DEPARTMENT OF INSURANCE, when this Defendant was ordered to pay the following penalties for violating various TEX. INS. CODE provisions including, but not limited to, the TEXAS PROMPT PAY STATUTES (i.e., including Chapter1301 of the TEX. INS. CODE):
  • on May 22, 2012 this Defendant was ordered to pay $2,676,000 in penalties for clean claim violations in Texas;
  • on September 21, 2007 this Defendant was ordered to pay $15,00 in penalties for failing to abide by contractual agreements in Texas; and
  • on September 6, 2001 this Defendant was ordered to pay $1,250,000 in penalties for claim violations in Texas.

[2] By way of example, but not by way of limitation, HUMANA HEALTH PLAN OF TEXAS, INC. has been previously subjected to the jurisdiction and supervision by the TEXAS DEPARTMENT OF INSURANCE, when this Defendant was ordered to pay the following penalties for violating various TEX. INS. CODE provisions including, but not limited to, the TEXAS PROMPT PAY STATUTES (i.e., including Chapters 843 of the TEX. INS. CODE):
  • on May 22, 2012 this Defendant was ordered to pay $2,676,000 in penalties for clean claim violations in Texas;
  • on September 21, 2007 this Defendant was ordered to pay $15,00 in penalties for failing to abide by contractual agreements in Texas; and
  • on September 6, 2001 this Defendant was ordered to pay $1,250,000 in penalties for claim violations in Texas.

7

pleading, the Three Rivers Provider Network Agreement between the HOSPITAL and Three Rivers Provider Network, Inc. will sometimes be referred to as the "PREFERRED PROVIDER AGREEMENT."

19.    Pursuant to the PREFERRED PROVIDER AGREEMENT with Three Rivers Provider Network, Inc. the HOSPITAL agreed to become a PREFERRED PROVIDER and provide treatment and services to certain covered individuals at discounted rates, in consideration for the prompt payment of the HOSPITAL'S claims for doing so. Among other things, the PREFERRED PROVIDER AGREEMENT recited and provided:

> TRPN contracts with hospitals, physicians...and entities hereinafter referred to as "Facility" rendering medical and health care services at pre-determined rates as follows:
>
> 1. *Clients, Covered Services, Contract Rate:* TRPN contracts with insurance companies, third party administrators, health plans, individuals and entities hereinafter referred to as "Clients" that directly or indirectly access TRPN contracted providers for covered services.... The rate used in conjunction with this Agreement will be a twenty percent (20%) discount off of Facilities' usual charge for covered services, less any applicable co-payments, co-insurance or deductibles. Clients are obligated to make payment directly to facilities... at the contracted rate... . Payments shall be made within thirty (30) calendar days of receipt of clean claim.

20.    In order to meet HUMANA'S obligations to provide health care benefits and services to their insured members residing in Texas, and to derive the benefit of only having to pay *discounted rates* for doing so, on information and belief HUMANA INSURANCE CO. and HUMAN HEALTH PLAN both entered into one or more SUBSCRIBER SERVICES AGREEMENTS with Three Rivers Provider Network, Inc. (i.e., the same PPO which had entered into the PREFERRED PROVIDER AGREEMENT with the HOSPITAL in 2007, as described above); and, as a result of doing so, it is reasonably believed that HUMANA INSURANCE CO. and HUMAN HEALTH PLAN both became contractually obligated to pay the HOSPITAL's claims:

> ➢ "*within thirty (30) calendar days of receipt of clean claim*", for covered services which the HOSPITAL provided to HUMANA'S insured members; and
>
> ➢ according to the rate schedule set forth in the PARTICIPATING PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc. (i.e., "*a twenty percent (20%) discount off of [the Hospital's] usual charge for covered services, less any applicable co-payments, co-insurance or deductibles*").

8

It is also reasonably believe that the HOSPITAL, as a PREFERRED PROVIDER in the Three Rivers Provider Network, Inc. PPO was a "Third Party Beneficiary" under the SUBSCRIBER SERVICES AGREEMENT(S) among Three Rivers Provider Network, Inc., HUMANA INSURANCE CO. and HUMANA HEALTH PLAN.

21.     On information and belief, the SUBSCRIBER SERVICES AGREEMENT(S) entered into among Three Rivers Provider Network. Inc. (i.e., as the PPO), and Defendants HUMANA INSURANCE CO. and HUMANA HEALTH PLAN (i.e., as Clients of the PPO) provided, in effect, that HUMANA INSURANCE CO. and HUMANA HEALTH PLAN:

> purchased the right to take advantage of / benefit from only having to pay discounted rates (i.e., only 80% of the HOSPITAL's usual charges for covered services, as opposed to the HOSPITAL's full billed charges) on the HOSPITAL's claims for hospital goods and services provided to the Defendants' insured members; and

> Contractually agreed and promised to:
  • Promptly pay the HOSPITAL's clean claims within thirty (30) calendar days of receipt of receipt of same; and
  • Abide by the TEXAS PROMPT PAY STATUTES, including Chapters 843 and 1301 of the TEX. INS. CODE.

22.     On information and belief, the terms of the SUBSCRIBER SERVICES AGREEMENT(S) among the PPO, HUMANA INSURANCE CO. and HUMANA HEALTH PLAN provided that the PPO (i.e., Three Rivers Provider Network, Inc.), was given power of attorney and authority to bind HUMANA INSURANCE CO. and HUMANA HEALTH PLAN to the PREFERRED PROVIDER AGREEMENT which Three Rivers Provider Network, Inc. entered into with the HOSPITAL; and, thus, HUMANA INSURANCE CO. and HUMANA HEALTH PLAN are legally and contractually bound to pay the HOSPITAL's claims pursuant to the terms (including rates) set forth in the PREFERRED PROVIDER AGREEMENT which the HOSPITAL entered into with Three Rivers Provider Network, Inc.

A. LATE PAYMENT PENALTIES AND ATTORNEY'S FEES OWED FOR LATE PAYMENT OF CLAIM FOR TREATING PATIENT #1.

23.     From April 10, 2012 through April 13, 2012, a patient whose initials are D. M., but who will only be identified hereinafter as "Patient #1", was admitted to Plaintiff's hospital in Bexar County, Texas; and,

9

thereafter, Patient #1 was properly provided medically necessary hospital treatment, goods and services. Furthermore, on information and belief, before Patient #1 was treated, he / she signed under oath (with a notarized jurat) an irrevocable assignment (i.e., to the HOSPITAL) of all of Patient #1's right, title and interest in all claims, causes of action and benefits Patient #1 was entitled to receive from all insurance companies, health maintenance organizations, and health plans including, but not limited to, HUMANA INSURANCE Co. and HUMANA HEALTH PLAN.[3] Thus, this HOSPITAL enjoys, by reason of the assignment, more standing to complain about, and sue for, under payments and late payments of the HOSPITAL'S claims for treating Patient#1, than did Patient #1.

---

[3] The irrevocable assignment which it is believed this patient signed stated, among other things:

*In consideration of [the Hospital] providing to [Patient#1] (hereinafter referred to as "Patient") hospital care and treatment including, but not limited to, the implantation of valuable and costly medical / orthopedic devices and other medical / surgical equipment and supplies (hereinafter collectively referred to as "medical devices and treatment"), and other good and valuable consideration, the receipt and sufficiency of which is hereby agreed and acknowledged, and in order to induce [the Hospital] to provide the Patient with care, medical devices and treatment the undersigned, acting hereby as an Assignor (hereinafter sometimes referred to simply as the "Assignor"), of his/her own free will and after a reasonable opportunity to discuss this irrevocable assignment with anyone of Assignor's choosing, does hereby sell, transfer, convey, grant and irrevocably and forever assign to [the Hospital] all known and unknown, past, present, and future rights, title and interest in all claims, causes of action (i.e., pursuant to common law, statute, or in equity and whether based upon tort, breach of contract, breach of fiduciary duty, or otherwise), insurance benefits, health care benefits and all other legal rights or recovery from / against: (i) Assignor's employer; (ii) any and all health plans pursuant to which Assignor and / or Patient are entitled to receive health benefits and / or money to pay for medical care, hospital care, medical devices or treatment; (iii) any and all Administrators and / or Fiduciaries of all health plans pursuant to which Assignor and / or Patient are entitled to receive health benefits and / or money to pay for medical care, hospital care, medical devices or treatment, damages or loss (i.e., for breaches of any fiduciary duties by said Administrators and / or Fiduciaries); (iv) any and all insurance companies pursuant to which Assignor and / or Patient are entitled to receive any benefits, proceeds and / or money to pay for medical care, hospital care, medical devices or treatment,...; (v) any and all Health Maintenance Organizations ("HMO") pursuant to which Assignor and / or Patient are entitled to receive health benefits and / or money to pay for medical care, hospital care, medical devices or treatment; (vi) any and all Preferred Provider Organizations ("PPO") pursuant to which Assignor and / or Patient are entitled to receive health benefits and / or money to pay for medical care, hospital care, medical devices or treatment; ...*

*This Irrevocable Assignment shall be IRREVOCABLE, FULLY BINDING AND FOREVER; and is intended to be broadly construed to assign, transfer, grant, and convey to [the Hospital] all of the rights, title, and interest which Assignor now has, or may hereinafter acquire, to make demands, submit claims, receive proceeds, give binding releases to Payors and other responsible parties referenced above, file suit to collect, negotiate settlement, prosecute law suits to judgment, appeal adverse claim determinations, appeal adverse judgments, levy execution on judgments, release judgments, recover and keep all payments from: (i) Assignor's employer; (ii) any and all health plans; (iii) any and all Administrators and / or Fiduciaries of all health plans; (iv) any and all insurance companies; (v) any and all Health Maintenance Organizations ("HMO"); (vi) any and all Preferred Provider Organizations ("PPO");...*

10

24.     Furthermore, at the time Patient #1 was treated at the HOSPITAL, Patient #1 was considered "In-Network", in that the patient was insured under / covered by an insurance policy or health plan issued or underwritten by HUMANA INSURANCE CO. and / or HUMANA HEALTH PLAN, both of which are also reasonably believed to have entered into one or more SUBSCRIBER SERVICES AGREEMENTS with Three Rivers Provider Network, Inc. (i.e., the same PPO which had also entered into the PREFERRED PROVIDER AGREEMENT with the HOSPITAL in 2007, as described above). Thus, as it related to the care the HOSPITAL provided to Patient #1, the HOSPITAL was a PREFERRED PROVIDER in the PPO known as the Three Rivers Provider Network ("TRPN"), as explained in the paragraphs above.

25.     Before Patient #1 was admitted for hospitalization and treatment at the HOSPITAL, Patient #1 presented a HUMANA identification card to the HOSPITAL, which identified Patient #1 as an insured member of HUMANA HEALTH PLAN being administered by HUMANA INSURANCE CO.; and which advised providers (including the Plaintiff, in this case) to telephone HUMANA (i.e., using a phone number given on the HUMANA identification card), for verification of coverage and precertification of medical or surgical services. As instructed on the HUMANA IDENTIFICATION card, the HOSPITAL's insurance verification clerk did telephone HUMANA, at which time Humana's agent represented to the HOSPITAL that Patient #1 was covered under Humana Health Plan, which was being administered by HUMANA INSURANCE CO. Furthermore, after the HOSPITAL's insurance verification clerk gave Humana's agent a detailed description of the operative procedures and CPT Codes for all the treatment which Patient #1's doctors wanted him / her to undergo at the HOSPITAL, Humana's agent also approved / pre-authorized three (3) days of In-Patient hospitalization for those procedures to be performed on Patient #1 while admitted in the HOSPITAL.

26.     The HOSPITAL reasonably relied upon the assurances, verifications and pre-authorization given by Humana's agent and agreed to admit Patient #1; and on April 10, 2012 Patient #1 was admitted and received the medically necessary hospital care and treatment which Patient #1's doctors ordered for him / her to receive /

undergo at the HOSPITAL, and which HUMANA's agent previously approved / pre-authorized. Patient #1 was thereafter discharged on April 13, 2012.

27.     On April 26, 2012 the HOSPITAL timely and properly submitted its clean claim for the pre-authorized hospitalization, care and treatment it provided to Humana's insured member (Patient #1) and the HOSPITAL submitted its clean claim to HUMANA, *electronically*, for total charges of $572,326.51 for the three (3) days of pre-authorized hospitalization for the surgical procedure performed on Patient #1.

28.     On May 21, 2012 HUMANA's Financial Recovery Specialist, Wittney Witt, sent a letter to the HOSPITAL requesting the HOSPITAL to either fax or mail, to HUMANA, the HOSPITAL's "Detailed Itemization" for the three (3) days of pre-authorized hospitalization for the surgical procedure performed on Patient #1; and on May 23, 2012 the HOSPITAL mailed those records to HUMANA by certified mail return receipt requested.

29.     Furthermore, on May 24, 2012 yet another HUMANA representative (Stephanie) telephoned the HOSPITAL's representative (i.e., Jane McCleny), and asked the HOSPITAL to fax copies of the HOSPITAL's Itemized Statements, for treating Patient #1, to HUMANA at fax number (501) 502-7208; and, at 1:59 PM that same day, the HOSPITAL's representative (i.e., Jane McCleny), did fax the HOSPITAL's Itemized Statement for treating Patient #1 to HUMANA at fax number (501) 502-7208, pursuant to HUMANA's request earlier that day.

30.     Of course, HUMANA's receipt (i.e., on May 24, 2012) of the HOSPITAL's faxed copies of Itemized Statement for treating Patient #1, triggered the statutory fifteen (15) day time limit within HUMANA must have paid the HOSPITAL's claim[4]; and, accordingly, June 8, 2012 was the statutory claim payment deadline for

_____

[4] The applicable TEX. INS. CODE provisions state:

*§ 1301.1054. Requests for Additional Information*

    *(a)  If an insurer needs additional information from a treating preferred provider to determine payment, the insurer, not later than the 30th calendar day after the date the insurer receives a clean claim, shall request in writing that the preferred provider provide an attachment to the claim that is relevant and necessary for clarification of the claim. The request must describe with specificity the clinical information requested and relate only to information the insurer can demonstrate is specific to the claim or the claim's related episode of care. The preferred provider is not required to provide an attachment that is not contained in, or is not in the process of being incorporated into, the patient's medical or billing record maintained by a preferred provider.*

12

HUMANA to have paid the full amount owed on the HOSPITAL's claim for treating Patient #1, pursuant to TEX. INS. CODE §843.3385 and / or TEX. INS. CODE §1301.1054(b) (i.e., after which date payment penalties applied, pursuant to TEX. INS. CODE §843.342 and / or §1301.137).

31.    However, HUMANA did not comply with the applicable statutory requirements cited above (i.e., the requirement that HUMANA make a prompt payment of the HOSPITAL's claim for treating Patient #1 on or before June 8, 2012); and, in particular, HUMANA did not even attempt to make any payment on the HOSPITAL's claim until June 28, 2012, when HUMANA made a $239,999.47 payment. Although HUMANA's remittance advise to the HOSPITAL dated June 28, 2012 (i.e., which accompanied the $239,999.47 payment), did acknowledge that the HOSPITAL was being paid as a PREFERRED PROVIDER in the Three Rivers Provider Network, it was not an accurate assertion that the HOSPITAL's *"charges were paid in accordance with the TRPN / Three Rivers Provider Network Agreement"* because, in truth and fact, Humana's $239,999.47 payment was **not** in the full amount which was required to be paid in accordance with the Three Rivers Provider Network Agreement (i.e., the Preferred Provider Agreement between the HOSPITAL and Three Rivers Provider Network, Inc.). In this respect, the HOSPITAL's claim (i.e., as a PREFERRED PROVIDER in that particular PPO) was *underpaid* by, not less than, $42,871.38.

32.    Furthermore, in addition to being deficiently *underpaid* by not less than $42,871.38, HUMANA's $239,999.47 payment on June 28, 2012 was a *late payment* (i.e., late by 3 weeks), in that both the applicable contractual claim payment deadline (i.e., set forth in the PREFERRED PROVIDER AGREEMENT), as well as the statutory claim payment deadline (i.e., set forth in TEX. INS. CODE §843.3385 and §1301.1054(b)), required HUMANA to have made payment in full by June 8, 2012 (i.e., the 15th day after HUMANA received the

---

(b)  *An insurer that requests an attachment under Subsection (a) shall determine whether the claim is payable on or before the later of the 15th day after the date the insurer receives the requested attachment [i.e., June 8, 2012] or the latest date for determining whether the claim is payable under Section 1301.103 or 1301.104 [i.e., May 26, 2012].*

13

HOSPITAL's Itemized Statement for this patient's account, which HUMANA received no later than May 24, 2012).

33. In any event, the HOSPITAL did promptly "Appeal" the underpayment, which HUMANA paid late on June 28, 2012; and in the HOSPITAL's Appeal it clearly pointed out that $282,870.89 was the proper amount which HUMANA should have paid on the HOSPITAL's claim for treating Patient #1. Subsequently HUMANA's own Financial Recovery Manager, (Darlene Duval), admitted this operative fact in her / Humana's February 11, 2013 letter to the HOSPITAL (i.e., sent in response to the HOSPITAL's Appeal), whereby HUMANA / Ms. Duval admitted *"We then recalculated and determined the correct paid amount was $282,870.00... ."*

34. Remarkably, in response to the HOSPITAL's Appeal HUMANA did make an additional $80,503.37 payment on the HOSPITAL's claim for treating Patient #1[5]; and, this additional payment was made on or about, on December 5, 2012. Although HUMANA and Darlene Duval were correct, when they admitted in their February 11, 2013 letter that HUMANA had under paid the HOSPITAL's claim, many other aspects of HUMANA's letter were inaccurate including, but not limited to, the unfounded assertions therein that:

➢ HUMANA *"originally paid $239,999.47 on April 26, 1012 [sic]"* (i.e., this was incorrect because HUMANA's initial payment in the amount of $239,999.47 was paid on June 28, 2012); and

➢ HUMANA *"paid $320,502.84 on 12/5/12"* (i.e., this was incorrect because HUMANA only paid $80,503.37 on December 5, 2012).

35. Regardless, it is beyond dispute that when HUMANA did eventually make its $239,999.47 payment on June 28, 2012 (i.e., HUMANA's first payment on this claim), that payment was both:

➢ Late, by not less than 21 days; and

➢ An underpayment, by not less than $42,871.38.

---

[5] When this additional $80,503.37 payment was added to the $239,999.47 amount initially paid, back on June 28, 2012, both payments together totaled $320,502.84.

14

Consequently, HUMANA did not fulfill either its contractual or its statutory obligations to promptly make a claim determination and pay the HOSPITAL, as a PREFERRED PROVIDER in the Three Rivers Provider Network, the **full** amount owed on the HOSPITAL's claim in question; and, by reason of HUMANA's under payment and late payment, up till the date of Humana's second payment, made on December 5, 2012 (i.e., in the amount of $80,503.37) HUMANA still owed the HOSPITAL not less than $146,803.42, to wit:

| | |
|---|---|
| Amount still owed on the HOSPITAL's claim as a Preferred Provider (at the TRPN contracted rate). | $42,871.38 |
| Statutory late payment penalties & interest through December 5, 2012, not less than ................ | + 103,932.92 |
| **Total amount HUMANA still owed the HOSPITAL (as of Dec. 5, 2012) not less than** .............. | **$146,803.42** |

36. Therefore, even *after* crediting HUMANA's December 5, 2012 payment in the amount of $80,503.37 (i.e., Humana's 2nd and last payment on this claim), HUMANA still owed the HOSPITAL not less than $66,300.43 [6]; and, consequently, no refund was / is due HUMANA on this claim for treating Patient #1.

37. Notwithstanding these facts, however, at a time when HUMANA still owed the HOSPITAL more than $66,300 on the HOSPITAL's claim for treating this particular patient, HUMANA began sending letters to the HOSPITAL, erroneously contending that HUMANA had made an "*overpayment*" to the HOSPITAL. Consequently, and as was foreseeable, it became necessary for the HOSPITAL to hire attorney Randal Payne and the SULLINS & JOHNSTON P.C. law firm (hereinafter sometimes referred to collectively as "the HOSPITAL'S attorneys") to investigate the facts of this claim and enforce the HOSPITAL's rights:

> ➢ not to be deceived into making an unwarranted refund to HUMANA; and

> ➢ to be paid the full amount owed by HUMANA, pursuant to the written managed care agreements and the applicable Texas law (i.e., not less than $66,300.43 plus the attorneys' fees the HOSPITAL incurred in doing so).

---

[6] The calculation of the amount still due the HOSPITAL, after crediting HUMANA's December 5, 2012 payment (i.e., in the amount of $80,503.37) is:

| | |
|---|---|
| Total amount owed the HOSPITAL as of Dec. 5, 2012 (before crediting 2nd payment) not less than... | $146,803.42 |
| Amount of HUMANA's 2nd payment on December 5, 2012) ............................................... | - $80,503.37 |
| **Total amount HUMANA still owed the HOSPITAL** ................................................. | **$66,300.43** |
| (after crediting the 2nd and last payment made on Dec. 5, 2012) | |

15

38.     By his letter dated March 20, 2013 and sent to HUMANA *via* certified mail return receipt requested, the HOSPITAL's attorney disputed that any refund was owed HUMANA by the HOSPITAL for treating Patient #1; and that letter also gave "Notice of Claim" to HUMANA for the prompt payment of the remaining $66,300.43 owed to the HOSPITAL (i.e., as both an under paid PREFERRED PROVIDER and as a late paid PREFERRED PROVIDER in the Three Rivers Provider Network PPO). In addition, the March 20, 2013 letter from the HOSPITAL's attorney made formal presentment and demand upon HUMANA for the prompt payment of the remaining $66,300.43 owed the HOSPITAL, as statutory late payment penalty and interest pursuant to TEX. INS. CODE § 843.342 and / or §1301.137.

39.     Notwithstanding these facts, however, HUMANA unjustifiably refused to give notice that it was abandoning its claims for a refund for the payments made on the claim for treating Patient #1; nor did HUMANA pay the HOSPITAL the additional moneys owed on this claim for treating Patient #1. Consequently, the HOSPITAL seeks the recovery of all monies still owed on the claim for treating Patient #1 (i.e., not less than $66,300.43), as well as the reasonable and customary attorney's fees for the necessary legal services performed by the HOSPITAL's attorneys in efforts to enforce the HOSPITAL's statutory and contractual rights (i.e., as both an under paid PREFERRED PROVIDER and as a late paid PREFERRED PROVIDER in the Three Rivers Provider Network PPO), through trial and all levels of appeal.

40.     The HOSPITAL is also seeking a Declaratory Judgment from this Court, pursuant to TEX. CIV. PROC. & REM. CODE Chapter 37, adjudicating the obligations and liabilities of the parties to one another, in light of the operative facts; and, specifically, the HOSPITAL is seeking a Declaratory Judgment that, pursuant to the written agreements of the parties and the applicable Texas law, the HOSPITAL owes no refund to HUMANA for treating Patient #1.

**B.  PAST DUE BALANCE STILL OWED ON THE CLAIM, LATE PAYMENT PENALTIES, AND ATTORNEY'S FEES OWED FOR LATE PAYMENT OF CLAIM FOR TREATING PATIENT #2.**

16

41.    From April 25, 2012 through May 3, 2012, a patient whose initials are E. R., but who will only be identified hereinafter as "Patient #2", was admitted to Plaintiff's hospital in Bexar County, Texas and thereafter, Patient #2 was properly provided medically necessary hospital treatment, goods and services by the Hospital. Furthermore, on information and belief, before Patient #2 was treated, it is believed that he / she signed, under oath (*via* a notarized jurat), an irrevocable assignment (i.e., to the HOSPITAL) of all of Patient #2's right title and interest in all claims, causes of action and benefits the patient was entitled to receive from all insurance companies, health maintenance organizations, and health plans including, but not limited to, HUMANA INSURANCE CO. and HUMANA HEALTH PLAN.[7] Thus, this HOSPITAL enjoys, by reason of the assignment, more standing to complain about and sue for underpayments and late payments of the HOSPITAL'S claims for treating Patient #2, than did Patient #2.

42.    Furthermore, at the time Patient #2 was treated at the HOSPITAL, Patient #2 was considered "In-Network", in that the patient was insured by / covered under an insurance policy or health plan issued or underwritten by HUMANA INSURANCE CO. and / or HUMANA HEALTH PLAN, both of which are also reasonably believed to have entered into one or more SUBSCRIBER SERVICES AGREEMENTS with Three Rivers Provider Network, Inc. (i.e., the same PPO which had also entered into the PREFERRED PROVIDER AGREEMENT with the HOSPITAL in 2007, as described above). Thus, as it related to the care the HOSPITAL provided to Patient #2, the HOSPITAL was a PREFERRED PROVIDER in the PPO known as the Three Rivers Provider Network ("TRPN"), as explained in the underlying back ground facts recited above.

43.    Before Patient #2 was admitted for hospitalization and treatment at the HOSPITAL, Patient #2 presented a HUMANA identification card to the HOSPITAL, which identified this patient as the insured member of HUMANA HEALTH PLAN being administered by HUMANA INSURANCE CO.; and which advised providers

---

[7] The irrevocable assignment which it is believed this patient signed had language similar to that which Patient #1 signed, as described previously in this pleading.

17

(including the Plaintiff, in this case) to telephone HUMANA's agent (i.e., using a phone number given on THE HUMANA identification card), for verification of coverage and precertification of medical for surgical services. As instructed on the HUMANA identification card, the HOSPITAL's insurance verification clerk did telephone HUMANA, at which time HUMANA's agent represented to the HOSPITAL that Patient #2 was covered under HUMANA HEALTH PLAN, which was being administered by HUMANA INSURANCE CO. Furthermore, after the HOSPITAL's insurance verification clerk first gave HUMANA's agent a detailed description of the operative procedures and CPT Codes which Patient #2's doctors wanted the patient to undergo at the HOSPITAL, HUMANA's agent also approved / pre-authorized Patient #2's hospitalization and the performance of those procedures on Patient #2, while admitted in the HOSPITAL.

44. The HOSPITAL reasonably relied upon the assurances, verifications and pre-authorization given by HUMANA's agent and agreed to admit Patient #2; and on April 25, 2012 Patient #2 was admitted and received the medically necessary hospital care and treatment his / her doctors ordered for Patient #2 to receive / undergo at the HOSPITAL and which HUMANA's agent also approved / pre-authorized. Patient #2 was thereafter discharged on May 3, 2012.

45. On May 18, 2012 the HOSPITAL timely and properly submitted its clean claim for the pre-authorized hospitalization, care and treatment it provided to Patient #2 (i.e., HUMANA's insured member); and the HOSPITAL submitted its clean claim to HUMANA, *electronically*, for total charges of $395,791.26 for the pre-approved surgical procedures and care provided to Patient #2.

46. On June 14, 2012 HUMANA paid $66,369.39 to the HOSPITAL on the claim for the hospital care and treatment provided to Patient #2; and, although purporting to make the payment to the HOSPITAL as a PREFERRED PROVIDER in the Three Rivers Provider Network PPO (i.e., pursuant to the PREFERRED PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc.), HUMANA's $66,369.39 payment to the HOSPITAL on June 14, 2012 was $237,515.46 less than the amount the HOSPITAL was entitled to receive

18

according to the PREFERRED PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc. Furthermore, the payment was also much less than the amount reasonably expected, based upon the benefits represented to HOSPITAL prior to the admission of the patient and the applicable contracts. Apparently HUMANA's $66,369.39 claim payment amount was calculated, albeit incorrectly, as follows:

$395,603.77 Total Charges
- 329,116.21 Amount in excess of what HUMANA described as the "allowed amount"
    $66,487.56 Amount which HUMANA described as the "allowed amount"
     - 118.17 Less Patient portion / co-insurance
    $66,369.39 = Amount paid

47. June 17, 2012 was, both, the *contractual* and the *statutory* claim payment deadline, pursuant to TEX. INS. CODE §843.338(b) and §1301.103(b); and, accordingly, June 17, 2012 was the claim payment deadline for HUMANA to have paid the **full** amount owed on the HOSPITAL's claim for treating Patient #2, after which late payment penalties applied, pursuant to TEX. INS. CODE §843.342 and/or §1301.137.

48. However, HUMANA did not comply with the applicable statutory or contractual requirements, that it make a prompt payment of the **full** amount owed on HOSPITAL's claim for treating Patient #2 on or before June 17, 2012; and, in particular, Humana's $66,369.39 payment was *underpaid* by not less than $237,515.46. Because the claim was underpaid by $237,515.46, on September 16, 2012 the late payment penalties increased, pursuant to TEX. INS. CODE §843.342 and/or §1301.137, because that date was the 90th day *after* the June 17th statutory claim payment deadline set forth in TEX. INS. CODE §843.342 and §1301.103b. Therefore, as of September 16, 2012 the total unpaid contracted rate remaining due (i.e., $237,515.46) and late payment penalty owed by HUMANA (i.e., $200,000) total not less than $437,515.46; and he Defendants also owed, pursuant to the TEXAS PROMPT PAYMENT STATUTE, 18% annual interest on $200,000 (i.e., with the interest beginning to accrue on the date HUMANA was required to have paid the claim - June 17, 2012 - and ending on the date the claim is eventually paid in full). Therefore, thru August 23, 2013 the total amount owed by HUMANA on this claim was $481,109.98, to wit:

CALCULATION:

19

Because the claim balance will be paid after the 91st day after the date HUMANA was required to make a claim payment determination, HUMANA must pay:

The balance of the contracted rate remaining due ...................................... $237,515.46

Late payment penalty on the balance of the claim in the amount of the *lesser* of:

- 100% of the unpaid amount (i.e., $237,515.46);
  or
- $200,000.

  $237,515.46 > $200,000 ................................................... + 200,000.00

18% annual interest on the $200,000 penalty amount thru August 23, 2013 .........

TOTAL OWED ON THIS CLAIM THRU AUGUST 23, 2013 ...............................

$437,515.46
+   43,594.52 *

$481,109.98 **

*   This is computed using simple interest, which began to accrue on the $200,000 late payment penalty amount, on June 17, 2012 (i.e., the date HUMANA was required to pay the claim); and, although this is computed thru August 23, 2013, this interest based penalty will only stop accruing on the date the claim is paid in full.

**  An additional $98.63 in late payment penalty will accrue and be added to this total for each additional day *after* August 23, 2013 which HUMANA delays in paying this claim; and this calculation is:

$200,000  X  .18  = $36,000  X  1/365  =  $98.63 penalty per day

49.     The HOSPITAL submitted an Appeal to HUMANA; and made demand for additional $237,515.46 based upon the benefits represented to the HOSPITAL prior to admission of the patient and pursuant to the PREFERRED PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc.    (i.e., pursuant to which this claim was supposed to have been priced, processed and paid. However, HUMANA did not make any additional payments on the claim for treating Patient #2. Consequently, HUMANA has not fulfilled either its contractual or its statutory obligations to *promptly* make a claim determination and pay the HOSPITAL the *full* amount owed on the claim in question (i.e., an additional $237,515.46 amount owing, just based upon the contract rates and not including penalty or interest).

50.     Notwithstanding these facts, however, at a time when HUMANA still owed the HOSPITAL substantially more money for treating Patient #2, HUMANA began sending letters to the HOSPITAL erroneously contending that HUMANA had made an "*overpayment*" to the HOSPITAL; and, consequently, it became necessary for the HOSPITAL to hire attorney Randal Payne and the SULLINS & JOHNSTON P.C. law firm (hereinafter

20

sometimes referred to collectively as "the HOSPITAL'S attorney") to investigate the facts of this claim and enforce the HOSPITAL'S rights:

➢ not to be deceived into making an unwarranted refund to HUMANA; and

➢ to be paid the full amount owed by HUMANA, pursuant to the written managed care agreements and the applicable Texas law.

51.    By his letter dated March 22, 2013 and sent to HUMANA *via* CERTIFIED MAIL RETURN RECEIPT REQUESTED, the HOSPITAL'S attorney:

➢ disputed that any refund was owed HUMANA by the HOSPITAL for treating Patient #2; and

➢ gave "Notice of Claim" to HUMANA for the prompt payment of:

- $237,515.46 which is still owed on the claim, at the contract rate;

- $200,000 in late payment penalties, pursuant to TEX. INS. CODE §843.342 and/or §1301.137;

- 18% annual interest on $237,515.46, with the interest beginning to accrue on the date the HUMANA was required to pay the claim (i.e., June 17, 2012) and ending on the date the claim is paid in full; and

- $10,000 in attorney's fees

52.    Notwithstanding these facts, however, HUMANA unjustifiably refused to give notice that it was abandoning its claims for a refund for the payments made on the claim for treating Patient #2; nor did HUMANA pay the HOSPITAL the additional moneys owed on this claim for treating Patient #2. Consequently, the HOSPITAL seeks the recovery of all monies still owed on the claim for treating Patient #2, as well as the reasonable and customary attorney's fees for the necessary legal services performed by the HOSPITAL's attorneys in efforts to enforce the HOSPITAL'S statutory and contractual rights (i.e., as both an under paid PREFERRED PROVIDER and as a late paid PREFERRED PROVIDER in the Three Rivers Provider Network PPO), through trial and all levels of appeal.

53.    The HOSPITAL is also seeking a Declaratory Judgment from this Court, pursuant to TEX. CIV. PROC. & REM. CODE Chapter 37, adjudicating the obligations and liabilities of the parties to one another, in light

21

of the operative facts; and, specifically, the HOSPITAL is also seeking a Declaratory Judgment that, pursuant to the written agreements of the parties and the applicable Texas law, the HOSPITAL owes nothing to HUMANA for treating Patient #2.

C. **LATE PAYMENT PENALTIES AND ATTORNEY'S FEES OWED FOR LATE PAYMENT OF CLAIM FOR TREATING PATIENT #3.**

54.    From January 3, 2012 through January 15, 2012, a patient whose initials are V. H. but who will only be identified hereinafter as "Patient #3", was admitted to Plaintiff's hospital in Bexar County, Texas; and, thereafter, Patient #3 was properly provided medically necessary hospital treatment, goods and services by the HOSPITAL. Furthermore, on information and belief, before Patient #3 was treated, it is believed that he / she signed, under oath (*via* a notarized jurat), an irrevocable assignment (i.e., to the HOSPITAL) of all of Patient #3's right title and interest in all claims, causes of action and benefits Patient #3 was entitled to receive from all insurance companies, health maintenance organizations, and health plans including, but not limited to, HUMANA INSURANCE CO. and HUMANA HEALTH PLAN.[8] Thus, this HOSPITAL enjoys, by reason of the assignment, more standing to complain about and sue HUMANA for under payments and late payments of the HOSPITAL'S claim for treating Patient #3, than did Patient #3.

55.    Furthermore, at the time Patient #3 was treated at the HOSPITAL, Patient #3 was considered "In-Network", in that the patient was insured / covered by under an insurance policy or health plan issued or underwritten by HUMANA HEALTH PLAN, and which was administered by HUMANA INSURANCE CO., both of which are also reasonably believed to have entered into one or more SUBSCRIBER SERVICES AGREEMENTS with Three Rivers Provider Network, Inc. (i.e., the same PPO which had entered into the PREFERRED PROVIDER AGREEMENT with the HOSPITAL in 2007, as described above). Thus, as it related to the care the HOSPITAL

---

[8] The irrevocable assignment which it is believed Patient #3 signed had language similar to that which Patient #1 signed, as described previously in this pleading.

22

provided to Patient #3, the HOSPITAL was a PREFERRED PROVIDER in the Three Rivers Provider Network PPO, as explained in the underlying back ground facts recited above.

56.     Before Patient #3 was admitted for hospitalization and treatment at the HOSPITAL, Patient #3 presented a HUMANA identification card to the HOSPITAL, which identified this patient as the insured member of HUMANA HEALTH PLAN being administered by HUMANA; and which advised providers (including the Plaintiff, in this case) to telephone HUMANA's agent (i.e., using a phone number given on the HUMANA identification card), for verification of coverage and precertification of medical or surgical services. As instructed on the HUMANA identification card, the HOSPITAL's insurance verification clerk did telephone HUMANA, at which time Humana's agent represented to the HOSPITAL that Patient #3 was covered under HUMANA HEALTH PLAN, which was being administered by HUMANA INSURANCE CO. Furthermore, after the HOSPITAL's insurance verification clerk gave HUMANA's agent a detailed description of the operative procedures and CPT Codes which Patient #3's doctors wanted him / her to undergo at the HOSPITAL, HUMANA's agent also approved / pre-authorized Patient #3's hospitalization and the performance of those surgical procedures to be performed on Patient #3, while admitted in the HOSPITAL.

57.     The HOSPITAL reasonably relied upon the assurances, verifications and pre-authorization given by Humana's agent and agreed to admit Patient #3; and on January 3, 2012 Patient #3 was admitted and received the medically necessary hospital care and treatment Patient #3's doctors ordered for him / her to receive and undergo at the HOSPITAL, and which Humana's agent also approved / pre-authorized. Patient #3 was thereafter discharged on January 15, 2012.

58.     On January 24, 2012 the HOSPITAL timely and properly submitted its clean claim for the pre-authorized hospitalization, care and treatment it provided to Patient # 3 (i.e., HUMANA's insured member); and the HOSPITAL submitted its clean claim to HUMANA, electronically, for total charges of $1,436,438.27 for these dates of service; and consequently, February 24, 2012 was the *statutory* claim payment deadline pursuant to

TEX. INS. CODE §1301.103b and §843.338.[9]   Similarly, February 24, 2012 was also the *contractual* claim

payment deadline pursuant to the THREE RIVERS PROVIDER NETWORK AGREEMENT. However, as explained

below, HUMANA did not comply with these contractual and statutory requirements.

59.     On March 20, 2012, HUMANA paid $522,361.54 to the HOSPITAL on the claim for the care and

treatment provided to Patient #3; and purported to make the payment to the HOSPITAL as a PREFERRED

PROVIDER in the Three Rivers Provider Network PPO. This $522,361.54 payment to the HOSPITAL on March

20, 2012 was $320,232.40 less than the amount the HOSPITAL was entitled to receive.  However, even if the

March 20, 2012 payment of $522,361.54 by HUMANA was the proper amount which should have been paid to

the Hospital as a PREFERRED PROVIDER under the THREE RIVERS PROVIDER NETWORK AGREEMENT, which is

denied, in addition to the $522,361.54 claim amount paid HUMANA also owed an additional $100,000 in

statutory late payment penalties, as of March 20, 2012, pursuant to the TEXAS INSURANCE CODE.[10]

---

[9]  The cited provisions of the TEX. INS. CODE states:

"*when a claim is submitted in an electronic format, the Insurer must make a determination of whether the claim is payable no later than the 30th day after the date the Insurer receives a Clean Claim from a Preferred Provider, and must either pay the claim in full, make partial payment, or deny payment.*"

[10]  The $100,000 statutory late payment penalty owed by HUMANA, as of March 20, 2012 (i.e., if one were to assume the amount it paid was the correct amount), are calculated as follows:

| | | |
|---|---|---|
| Total Billed Charges ............................. | $1,455,364.71 | |
| Less non covered charges........................ | - $129,600.00 | |
| Covered billed charges.......................... | | $1,325,764.70 |

**1 – 45 Days Late:**
HUMANA must pay the contracted rate owed on the claim
(i.e., $522,361.54 paid) plus a penalty in the amount of the
*lesser* of:

- $401,701.60 = 50% of the difference between the covered billed charges, as submitted on the claim (i.e.,$1,325,764.70 ) and  the contracted rate (i.e., $522,361.54)

$$\begin{array}{r} \$1,325,764.70 \text{ covered billed charges (as submitted on the claim)} \\ -\ 522,361.54 \\ \hline \$\ 803,403.20 \times .50 = \$401,701.60 \end{array}$$

or

- **$100,000.**

24

60.     On or about April 20, 2012, the HOSPITAL timely and properly submitted its Appeal of the under payment of the HOSPITAL's claim for treating Patient #3 (i.e., which HUMANA paid only after both the contractual and the statutory the claim payment deadlines had past); and on or about May 22, 2012 (i.e., 87 days late) HUMANA made a second payment to the HOSPITAL on this claim, in the amount of $79,856 and this payment was posted to the HOSPITAL's account on or about May 29, 2012. Thus, HUMANA owes the HOSPITAL additional late payment penalty on this late paid $79,856 portion of the claim.

61.     Thereafter, the HOSPITAL timely and properly submitted its second Appeal of the under payment of the HOSPITAL's claim for treating Patient #3; and in response to the HOSPITAL's 2^{ND} Appeal, on or about November 7, 2012 HUMANA made an additional $212,786.70 payment on the HOSPITAL's claim for treating Patient #3. As it relates to that additional $212,786.70 payment made on or about November 7, 2012, even if it were assumed that it brought to the total payments up to the amount that should have originally been paid (i.e., before the February 24, 2012 *statutory* and *contractual* claim payment deadlines), an additional $200,000 late payment penalty is also owed, plus 18% annual interest on that $200,000 late payment penalty amount.[11] Consequently, HUMANA has not fulfilled either its contractual or its statutory obligations to *promptly* make a claim determination and pay the HOSPITAL *the full* amount owed on the claim in question.

62.     Notwithstanding these facts, however, at a time when HUMANA still owed the HOSPITAL more money for treating this particular patient, HUMANA began sending letters to the HOSPITAL erroneously contending that HUMANA had made an "*overpayment*" to the HOSPITAL; and, consequently, it became necessary

---

[11] The additional $212,786.70 payment was 256 days late (i.e., 256 days *after* the claim payment deadline of February 24, 2012); and thus HUMANA is responsible for penalty on this additional payment as follows:

90 + Days Late:
Because the $212,786.70 balance of the claim was paid on or after the 90^{th} day after the date HUMANA was required to make a determination, HUMANA must pay a penalty on the balance of the claim in the amount of the *lesser* of:
- 100% of the unpaid amount ($212,786.70)
  or
- $200,000.

PLUS 18% annual interest on that $200,000 amount (interest begins to accrue on the date HUMANA was required to pay the claim and ending on the date the claim is paid in full).

for the HOSPITAL to hire attorney Randal Payne and the SULLINS & JOHNSTON P.C. law firm to investigate the facts of this claim and enforce the HOSPITAL'S rights:

> not to be deceived into making an unwarranted refund to HUMANA; and

> to be paid the full amount owed by HUMANA, pursuant to the written managed care agreements and the applicable Texas law.

63.     By his letter dated March 22, 2013 and sent to HUMANA *via* certified mail return receipt requested, the HOSPITAL'S attorney:

> disputed that any refund was owed HUMANA by the HOSPITAL for treating Patient #3; and

> gave "Notice of Claim" to HUMANA for the prompt payment of:

- $379,856 in late payment penalties, pursuant to TEX. INS. CODE §843.342 and/or §1301.137;

- 18% annual interest; and

- $10,000 in attorney's fees

Notwithstanding these facts, however, HUMANA unjustifiably refused to give notice that it was abandoning its claims for a refund for the payments made on the claim for treating Patient #3; nor did HUMANA pay the HOSPITAL the additional moneys owed on this claim for treating Patient #3.

64.     Consequently, the HOSPITAL seeks the recovery of all monies still owed as late payment penalties owing on the claim for treating Patient #3, as well as the reasonable and customary attorney's fees for the necessary legal services performed by the HOSPITAL'S attorneys in efforts to enforce the HOSPITAL'S statutory and contractual rights (i.e., as both an under paid PREFERRED PROVIDER and as a late paid PREFERRED PROVIDER in the Three Rivers Provider Network PPO), through trial and all levels of appeal.

65.     The HOSPITAL is also seeking a Declaratory Judgment from this Court, pursuant to TEX. CIV. PROC. & REM. CODE Chapter 37, adjudicating the obligations and liabilities of the parties to one another, in light of the operative facts; and, specifically, the HOSPITAL is seeking a Declaratory Judgment that, pursuant to the

26

written agreements of the parties and the applicable Texas law, the HOSPITAL owes no refund to HUMANA for treating Patient #3.

**D. LATE PAYMENT PENALTIES AND ATTORNEY'S FEES OWED FOR LATE PAYMENT OF CLAIM FOR TREATING PATIENT #4.**

66.     From December 2, 2012 through December 5, 2012, a patient whose initials are K. O. but who will only be identified hereinafter as "Patient #4", was admitted to Plaintiff's hospital in Bexar County, Texas; and, thereafter, Patient #4 was properly provided medically necessary hospital treatment, goods and services by the HOSPITAL. Furthermore, on information and belief, before Patient #4 was treated, it is believed that he / she signed, under oath (*via* a notarized jurat), an irrevocable assignment (i.e., to the HOSPITAL) of all of Patient #4's right title and interest in all claims, causes of action and benefits Patient #4 was entitled to receive from all insurance companies, health maintenance organizations, and health plans including, but not limited to, HUMANA INSURANCE CO. and HUMANA HEALTH PLAN.[12] Thus, this HOSPITAL enjoys, by reason of the assignment, more standing to complain about, and sue HUMANA for, underpayments and late payments of the HOSPITAL's claims for treating Patient#4, than did Patient #4.

67.     Furthermore, at the time Patient #4 was treated at the HOSPITAL, Patient #4 was considered "In-Network", in that Patient #4 was insured / covered by under an insurance policy or health plan issued or underwritten by HUMANA INSURANCE CO. and / or HUMANA HEALTH PLAN, both of which are also reasonably believed to have entered into one or more SUBSCRIBER SERVICES AGREEMENTS with Three Rivers Provider Network, Inc. (i.e., the same PPO which had also entered into the PREFERRED PROVIDER AGREEMENT with the HOSPITAL in 2007, as described above). Thus, as it related to the care the HOSPITAL provided to Patient #4, the HOSPITAL was a PREFERRED PROVIDER in the Three Rivers Provider Network PPO (i.e., known as "TRPN"), as explained in the underlying back ground facts recited above.

---

[12] The irrevocable assignment which it is believed this patient signed had language similar to that which Patient #1 signed, as described previously in this pleading.

68.     Before Patient #4 was admitted for hospitalization and treatment at the HOSPITAL, Patient #4 presented a HUMANA identification card to the HOSPITAL, which identified this patient as an insured member of HUMANA HEALTH PLAN, being administered by HUMANA; and which advised providers (including the Plaintiff in this case) to telephone Humana's agent (i.e., using a phone number given on THE HUMANA identification card), for verification of coverage and precertification of medical or surgical services. As instructed on the HUMANA identification card, the HOSPITAL's insurance verification clerk did telephone HUMANA, at which time HUMANA's agent represented to the HOSPITAL that Patient #4 was a covered member of HUMANA HEALTH PLAN; and that Patient #4 was, therefore, covered under HUMANA HEALTH PLAN, which was being administered by HUMANA INSURANCE CO. Furthermore, after the HOSPITAL'S insurance verification clerk gave Humana's agent a detailed description of the operative procedures and CPT Codes which Patient #4's doctors wanted Patient #4 to undergo at the HOSPITAL, HUMANA's agent also approved / pre-authorized hospitalization for those surgical procedures to be performed on Patient #4 while admitted in the HOSPITAL.

69.     The HOSPITAL reasonably relied upon the assurances, verifications and pre-authorization given by Humana's agent and agreed to admit Patient #4; and on December 2, 2012 Patient #4 was admitted and received the medically necessary hospital care and treatment Patient #4's doctors ordered for Patient #4 to receive and undergo at the HOSPITAL, and which HUMANA's agent also approved / pre-authorized. Patient #4 was thereafter discharged on December 5, 2012.

70.     On December 14, 2012 the HOSPITAL timely and properly submitted its clean claim for the pre-authorized hospitalization, care and treatment it provided to Humana's insured member / Patient #4; and the HOSPITAL submitted its clean claim to HUMANA Insurance Company, electronically, for total charges of $189,306.61. Therefore, January 13, 2013 was both the *contractual* and *statutory* claim payment deadlines, by which HUMANA must have make a claim determination and paid the HOSPITAL (i.e., as a PREFERRED PROVIDER

in the Three Rivers Provider Network PPO), the **full** amount owed on the HOSPITAL's claim for treating Patient #4.

71.    However, HUMANA did not comply with the applicable statutory or contractual requirements that it make a prompt payment of the HOSPITAL's claim for treating Patient # 4, on or before January 13, 2012; and in particular, HUMANA did not even attempt to make any payment on the HOSPITAL's claim until February 3, 2013, when HUMANA made a $105,871.70 payment. This payment was not only late by three (3) weeks; but the payment was also deficient in amount, in that it was at least $26,642.93 less than the HOSPITAL was entitled to receive pursuant to the managed care contracts described herein.

72.    Upon receipt of the $105,871.70 payment on or about February 3, 2012, the HOSPITAL had concerns about the claim pricing and processing for treating Patient #4; and, when the HOSPITAL later spoke with the insurance company's representative / agent, that representative asserted / told the HOSPITAL:

➢ that the claim had been paid according to the PREFERRED PROVIDER AGREEMENT between Three Rivers Provider Network, Inc. and the HOSPITAL; and

➢ If the HOSPITAL had questions or concerns about how the Three Rivers Provider Network, Inc. PPO discount was applied to this particular claim, the HOSPITAL would need to call and speak to a of Three Rivers Provider Network, Inc. (i.e., Stephanie Sousa), whose phone number was (619) 600-4855.

73.    Because the HOSPITAL did have questions and concerns about how the Three Rivers Provider Network PPO discount was applied to this particular claim for treating Patient #4, on March 5, 2012 the HOSPITAL's representative did call and speak to Stephanie Sousa of Three Rivers Provider Network, Inc.; and during that telephone conversation the HOSPITAL's representative did tell Ms. Sousa that:

➢ the HOSPITAL disagreed with the way and manner in which the claim was priced and paid; and

➢ the HOSPITAL did not agreed that this claim was priced and paid according to the PARTICIPATING PROVIDER AGREEMENT between Three Rivers Provider Network, Inc. and the HOSPITAL

Case Number: 2013CI14897                    Document Type: ENTIRE FILE CERTIFIED

In response to the HOSPITAL's representative's above described statements to Ms. Sousa of Three Rivers Provider Network, Inc., Ms. Sousa told the HOSPITAL's representative that, if the HOSPITAL wanted to "Appeal" the amount of the payment of the HOSPITAL's claim for treating Patient #4, the HOSPITAL should fax its Appeal to Three Rivers Provider Network, Inc. using fax number (619) 600-4818.

74.    The next day (i.e., on March 6, 2012), the HOSPITAL's representative faxed the HOSPITAL's written Appeal of the amount of the payment on the HOSPITAL's claim for treating Patient #4, to HUMANA and to Three Rivers Provider Network, Inc. using fax number (619) 600-4818; and the HOSPITAL's Appeal pointed out the HOSPITAL disagreed with the way the claim was repriced, in that it was deficient by not less than $26,642.93. In violation of the applicable Texas law set forth in the TEXAS INSURANCE CODE, however, neither HUMANA nor Three Rivers Provider Network, Inc. ever responded, in writing, to the HOSPITAL's written Appeal of the amount paid on the HOSPITAL's claim for treating Patient #4.

75.    In any event, it is beyond dispute that when HUMANA did eventually make its $105,871.70 payment on February 3, 2012 (i.e., HUMANA's only payment on this claim), that payment was late by not less than 21 days; but the HOSPITAL also contends that its claim was under paid by not less than $26,642.93. Consequently, HUMANA did not fulfilled either its *contractual* or its *statutory* obligations to **promptly** make a claim determination and pay the HOSPITAL, as a PREFERRED PROVIDER in the Three Rivers Provider Network PPO, the **full** amount owed on the claim in question.

76.    Even if it were assumed that HUMANA's $105,871.70 payment on February 3, 2012 was the correct amount which was initially owed on this particular claim (i.e., pursuant to the applicable agreements), which is not admitted, by reason of HUMANA's late payment of that $105,871.70 amount HUMANA still owes the HOSPITAL statutory late payment penalties OF not less than $41,717.46, pursuant to §1301.137 of the TEX.

INS. CODE.[13] Therefore, as of February 3, 2012 HUMANA still owed the HOSPITAL not less than $41,717.46 for statutory late payment penalties on this claim.

77.    Notwithstanding these facts, however, HUMANA began sending letters to the HOSPITAL erroneously contending that HUMANA had made an *"overpayment"* to the HOSPITAL (i.e., doing so at a time when HUMANA still owed the HOSPITAL more money for treating Patient #4); and, consequently, it became necessary for the HOSPITAL to hire attorney Randal Payne and the SULLINS & JOHNSTON P.C. law firm to investigate the facts of this claim and enforce the HOSPITAL's rights:

> ➢ not to be deceived into making an unwarranted refund to HUMANA; and

> ➢ to be paid the full amount owed by HUMANA, pursuant to the written managed care agreements and the applicable Texas law.

78.    By his letter dated March 21, 2013 and sent to HUMANA *via* certified mail return receipt requested, the HOSPITAL's attorney:

> ➢ disputed that any refund was owed HUMANA by the HOSPITAL for treating Patient #3; and

> ➢ gave "Notice of Claim" to HUMANA for the prompt payment of:

>> • $41,717.46 in late payment penalties, pursuant to TEX. INS. CODE §843.342 and / or §1301.137; and

>> • $10,000 in attorney's fees.

Notwithstanding these facts, however, HUMANA unjustifiably refused to give notice that it was abandoning its claims against the HOSPITAL for a refund for the payments HUMANA had made on the

---

[13] The applicable sections of the TEX. INS. CODE, provide that if HUMANA fails to make a timely payment of the proper amount within 1 – 45 days late, HUMANA must pay the contracted rate owed on the claim plus a penalty in the amount of the *lesser* of:

> ➢ 50% of the difference between the billed charges as submitted on the claim (i.e., $189,306.61) and the contracted rate (i.e., $105,871.70) [$189,306.61 − $105,871.70 = $83,434.91 X .50 = $41,717.46];
>> or
> ➢ $100,000.

31

HOSPITAL's claim for treating Patient #4; nor did HUMANA pay the HOSPITAL the additional moneys owed on HOSPITAL's claim for treating Patient #4.

79.      Consequently, the HOSPITAL seeks the recovery of all monies still owed as late payment penalties owing on the HOSPITAL's claim for treating Patient #4, as well as the reasonable and customary attorneys' fees for the necessary legal services performed by the HOSPITAL's attorneys in efforts to enforce the HOSPITAL's statutory and contractual rights (i.e., as, both, an under paid PREFERRED PROVIDER and as a late paid PREFERRED PROVIDER in the Three Rivers Provider Network PPO), through trial and all levels of appeal.

80.      The HOSPITAL is also seeking a Declaratory Judgment from this Court, pursuant to TEX. CIV. PROC. & REM. CODE Chapter 37, adjudicating the obligations and liabilities of the parties to one another, in light of the operative facts; and, specifically, the HOSPITAL is seeking a Declaratory Judgment that, pursuant to the written agreements of the parties and the applicable Texas law, the HOSPITAL owes no refund to HUMANA for treating Patient #4.

### DECLARATORY JUDGMENT CAUSES OF ACTION

81.      All of the paragraphs above are incorporated into this section of this pleading by reference, as if fully set forth verbatim.

82.      The HOSPITAL is seeking a Declaratory Judgment from this Court, pursuant to TEX. CIV. PROC. & REM. CODE Chapter 37, adjudicating the obligations and liabilities of the parties to one another, in light of the operative facts; and, specifically, the HOSPITAL is seeking a Declaratory Judgment that, pursuant to the written agreements of the parties and the applicable Texas law, the HOSPITAL owes no refunds to Defendants HUMANA HEALTH PLAN OF TEXAS, INC. and / or HUMANA INSURANCE COMPANY for any payments they made to the HOSPITAL on its claims treating Patients #1, #2, #3 or #4.

### BREACHES OF CONTRACT CAUSES OF ACTION

32

83.    All of the paragraphs above are incorporated into this section of this pleading by reference, as if fully set forth verbatim.

84.    The above described patients were insured members / covered members of Defendants HUMANA HEALTH PLAN OF TEXAS, INC. and / or HUMANA INSURANCE COMPANY; and each patient received medically necessary care and treatment from the HOSPITAL, which treatment and care was covered under a plan(s) and/or policy(ies) of insurance issued and / or underwritten by Defendants HUMANA HEALTH PLAN OF TEXAS, INC. and / or HUMANA INSURANCE COMPANY Co.

85.    Defendants HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY intentionally availed themselves of the benefits of the PARTICIPATING PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc. PPO, by attempting to take the contractual discounts provided for under the PREFERRED PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc. (the PPO).[14]

86.    Furthermore, Defendants HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY were third party beneficiaries under the PREFERRED PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc. Similarly, the HOSPITAL was a third party beneficiary of the SUBSCRIBER SERVICES AGREEMENT(s) among Three Rivers Provider Network, Inc., HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY.

87.    The HOSPITAL contends that HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY expressly agreed to the contractual provisions in the PREFERRED PROVIDER AGREEMENT by reason of the above cited contracts, documents and transactional background. However, even if it can be argued that HUMANA HEALTH PLAN OF TEXAS, INC. and / or HUMANA INSURANCE COMPANY were not signatories to the

---

[14] Although the Defendants took advantage of the existence of PREFERRED PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc. (i.e., by attempting to take the contractual discounts provided for under the PREFERRED PROVIDER AGREEMENT), the HOSPITAL is *not* admitting that the Defendants *correctly* applied the discounts set forth in the PREFERRED PROVIDER AGREEMENT; and indeed, it is the position of the Plaintiff that the Defendants did *not* accurately calculate and pay the correct amounts which are owed the HOSPITAL, at the rates set forth in the PREFERRED PROVIDER AGREEMENT or any of the other applicable contracts creating the Defendants' contractual / legal obligations to pay the HOSPITAL.

33

agreement in which the prompt and proper payment provisions, among others, are set forth (i.e., which is not admitted), the HOSPITAL will show that a non-signatory to a contract can still be held liable and / or responsible for the provisions contained therein. · Under the doctrine of equitable estoppel, a party can be prevented from claiming the benefits of a contract while seeking to avoid the sometimes onerous provisions also contained therein (i.e., such as prompt and proper payment provisions).

88.     In this case, HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY have previously asserted / taken the positions that, because HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY entered into the SUBSCRIBER SERVICES AGREEMENT(s) with the PPO (i.e., Three Rivers Provider Network, Inc.) and thereby became "Clients" of Three Rivers Provider Network, Inc.:

a.     HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY are legally entitled to take 20% discount off of the HOSPITAL's charges for the medically necessary treatment and services rendered to HUMANA's insured members (i.e., as set forth in the PREFERRED PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc.); and

b.     The HOSPITAL should be legally obligated to accept, as "payment in full", only 80% of the HOSPITAL's charges for the medically necessary treatment and services rendered to HUMANA's insured members for all of the HOSPITAL's claims for the medically necessary treatment and services rendered to HUMANA's insured members (i.e., as set forth in the PREFERRED PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc.), while HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY simultaneously seek to avoid the prompt and proper rate payment provisions contained in the very same PREFERRED PROVIDER AGREEMENT.

89.     Under the doctrine of equitable estoppel, HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY are estopped from both claiming the benefits of the contractual discount provided for in the PREFERRED PROVIDER AGREEMENT without also being held legally responsible for paying the rates set forth therein, on or before the claim payment deadlines set forth in that same PREFERRED PROVIDER AGREEMENT. Even if HUMANA HEALTH PLAN OF TEXAS, INC. and / or HUMANA INSURANCE COMPANY are ultimately found to be "non-signatories" to the PREFERRED PROVIDER AGREEMENT, it is the HOSPITAL's contention that HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY(i.e., as "Clients" of Three Rivers Provider

34

Network, Inc.) third-party beneficiaries of that PREFERRED PROVIDER AGREEMENT.[15] Furthermore, under the applicable law, HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY(i.e., as "Clients" of Three Rivers Provider Network, Inc.), should be bound by the rate and prompt payment provisions contained in said PREFERRED PROVIDER AGREEMENT.

90.     Additionally, it is also the HOSPITAL's contention that HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY should also be bound by the rate and prompt payment provisions contained in the PREFERRED PROVIDER AGREEMENT because, it is reasonably believed that HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY(i.e., as "Clients" of Three Rivers Provider Network, Inc.), knowingly and intentionally:

a. Signed SUBSCRIBER SERVICES AGREEMENT(S) with Three Rivers Provider Network, Inc., for the purpose of deriving the substantial financial benefits of procuring a network of PROVIDERS contractually bound to treat HUMANA'S INSURED members at *discounted* rates set forth in the PREFERRED PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc.

b. Signed other documents whereby HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY agreed to:

   i. pay or arrange to pay PREFERRED PROVIDERS in the Three Rivers Provider Network PPO (i.e., including the HOSPITAL) in accordance with the rates and payment deadlines set forth in the PREFERRED PROVIDER AGREEMENT between those PREFERRED PROVIDERS and Three Rivers Provider Network, Inc.; and

   ii. comply with the other applicable terms and conditions of PARTICIPATING PROVIDER AGREEMENT between those PREFERRED PROVIDERS and Three Rivers Provider Network, Inc. for the markets and the networks for which Humana Health Plan of Texas, Inc. and HUMANA INSURANCE COMPANY purchased those.

91.     Signed powers of attorney which provided that Humana Health Plan of Texas, Inc. and HUMANA INSURANCE COMPANY appointed and authorized Three Rivers Provider Network, Inc. to be the agent and

---

[15] As evidenced by Three Rivers Provider Network, Inc.'s "Client Listing" posted on its website at all times material to this lawsuit, a copy of which is attached hereto as Exhibit B, HUMANA is clearly one of Three Rivers Provider Network, Inc.'s "Client", as that phrase is defined in ¶ 1 of the PARTICIPATING PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider network, Inc. (*see* page 1 of the attached Exhibit A).

35

attorney-in-fact of HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY, for the purpose of making, executing, acknowledging and delivering (i.e., in HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY's place and stead), those PREFERRED PROVIDER AGREEMENTS between PREFERRED PROVIDERS and Three Rivers Provider Network, Inc. (i.e., like the Plaintiff in this case).

92.    On information and belief, Three Rivers Provider Network, Inc. executed the PREFERRED PROVIDER AGREEMENT with HOSPITAL as an authorized agent and attorney in fact for HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY (i.e., Disclosed Principals on whose behalf Three Rivers Provider Network, Inc. was acting) thereby obligating HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY to promptly pay (i.e., at the discounted rates set forth therein) the HOSPITAL for services rendered to HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY's insured members, including Patients # 1, #2, #3 and #4. Defendants HUMANA HEALTH PLAN OF TEXAS, INC. and / OR HUMANA INSURANCE COMPANY unjustifiably failed to pay the contracted rates / agreed upon rates in a timely manner in violation of above cited provisions of the TEXAS PROMPT PAYMENT STATUTE (i.e., which are set forth in the TEXAS INSURANCE CODE) and in material breach of:

> The PREFERRED PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc.;

> The SUBSCRIBER SERVICES AGREEMENT(S) among HUMANA HEALTH PLAN OF TEXAS, INC., HUMANA INSURANCE COMPANY, and Three Rivers Provider Network, Inc. (i.e., under which the HOSPITAL was a third party beneficiary);

> The policies of insurance and / or the health plans which covered the patients, which the HOSPITAL has standing to sue for by reason of the irrevocable assignments which each of the patients made to the HOSPITAL before or at the time the patients were being admitted to the HOSPITAL; and

> All the related agreements and documents evidencing the relationships and authorizations given and existing among the PPO (i.e., Three Rivers Provider Network, Inc.) and Defendants HUMANA HEALTH PLAN OF TEXAS, INC., HUMANA INSURANCE COMPANY(as Clients of Three Rivers Provider Network, Inc.).

36

93.     The above described conduct of HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY constitutes material breaches of:

➤ The PREFERRED PROVIDER AGREEMENT between the HOSPITAL and Three Rivers Provider Network, Inc.;

➤ The SUBSCRIBER SERVICES AGREEMENT(s) among HUMANA HEALTH PLAN OF TEXAS, INC., HUMANA INSURANCE COMPANY, and Three Rivers Provider Network, Inc. (i.e., under which the HOSPITAL is a third party beneficiary);

➤ The policies of insurance and / or the health plans which covered the patients, which the HOSPITAL has standing to sue for, by reason of the irrevocable assignments which each of the patients made to the HOSPITAL before or at the time the patients were being admitted to the HOSPITAL; and

➤ All the related agreements and documents evidencing the relationships and authorizations given and existing among the PPO (i.e., Three Rivers Provider Network, Inc.) and Defendants HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY (as Clients of Three Rivers Provider Network, Inc.).

94.     HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY's material breaches of the agreements described herein proximately caused actual damages to the HOSPITAL in an amount in excess of the minimum jurisdictional limits of this court.

## PROMISSORY ESTOPPEL CAUSE OF ACTION

95.     All of the paragraphs above are incorporated into this section of this pleading by reference, as if fully set forth verbatim.

96.     In the alternative, but initially insisting upon the BREACHES OF CONTRACT causes of action asserted above, the HOSPITAL pleads for recovery of monetary awards under the doctrine of promissory estoppels; and, in support of this cause of action, the HOSPITAL would show:

➤ HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY made promise(s) to HOSPITAL both directly and through its agent, the PPO (i.e., Three Rivers Provider Network, Inc.) and through the associated PREFERRED PROVIDER AGREEMENT, the SUBSCRIBER SERVICES AGREEMENT(s) and, perhaps, the other related documents, to pay the HOSPITAL promptly and in accordance with the PREFERRED PROVIDER AGREEMENT;

➤ HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY knew or should have known that HOSPITAL would rely upon those promise(s); and

37

➢ the HOSPITAL reasonably and substantially relied on those promises to the HOSPITAL's detriment in amounts greatly in excess of the minimum jurisdictional limits of this court.

## QUANTUM MERUIT CAUSE OF ACTION

97.　All of the paragraphs above are incorporated into this section of this pleading by reference, as if fully set forth verbatim.

98.　In the alternative, but initially s insisting upon the BREACHES OF CONTRACT causes of action asserted above, the HOSPITAL pleads for recovery of monetary awards under the doctrine of quantum meruit; and, in support of this cause of action, the HOSPITAL would show:

➢ the HOSPITAL furnished valuable medical services, hospital care and treatment to patients who were insured members covered under the policies and health plans issued / underwritten by HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY;

➢ the valuable medical services, hospital care and treatment were accepted by HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY and by its insured members;

➢ the valuable medical services, hospital care and treatment were furnished under circumstances which reasonably notified HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY that the HOSPITAL expected to be paid its usual and customary, fair and reasonable charges for the hospital care and treatment it provided;

➢ the HOSPITAL has not been paid the usual and customary, fair and reasonable charges for the valuable medical services, hospital care and treatment it provided to patients covered under the policies and health plans issued / underwritten by HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY; and

➢ the HOSPITAL has been damaged in amounts greatly in excess of the minimum jurisdictional limits of this court.

## ATTORNEY'S FEES

99.　All of the paragraphs above are incorporated into this section of this pleading by reference, as if fully set forth verbatim.

100.　It was necessary for the HOSPITAL to retain the services of attorneys licensed to practice law in the state of Texas to represent the HOSPITAL's legal interests and to protect the HOSPITAL's rights. Consequently, the HOSPITAL hired the law firm of SULLINS, JOHNSTON, ROHRBACH, & MAGERS and its attorneys

38

to investigate the allegations of HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY, later found to be wholly unfounded, to the effect that the HOSPITAL owed refunds to HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY for the payments of the HOSPITAL's claims for treating Patients #1, #2, #3 AND #4.

101.     Attorneys with the law firm of SULLINS, JOHNSTON, ROHRBACH, & MAGERS did perform necessary legal services and investigations into the allegations of HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY, to the effect that the HOSPITAL owed refunds to HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY for the payments of the HOSPITAL's claims for treating Patients #1, #2, #3 AND #4.   In this respect, the HOSPITAL's attorneys found HUMANA's allegations to be wholly unfounded, in that the HOSPITAL did not / does not owe any refunds to HUMANA HEALTH PLAN OF TEXAS, INC. or HUMANA INSURANCE COMPANY (i.e., for the payments of the HOSPITAL's claims for treating Patients #1, #2, #3 AND #4).

102.     Indeed, and to the contrary, the HOSPITAL's attorneys found that HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY owed the HOSPITAL additional monies on the claims for treating Patients #1, #2, #3 AND #4.   Furthermore, the HOSPITAL's attorneys made formal presentment and demand upon HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY for the additional amounts owed the HOSPITAL.

103.     Therefore, the HOSPITAL seeks to recover the reasonable and customary attorneys' fees for the necessary legal services performed on behalf of the HOSPITAL including, but not limited to, all legal fees for:

> The investigations of all of the unfounded allegations of HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY(i.e., to the effect that the HOSPITAL owed refunds to HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY for the payments of the HOSPITAL's claims for treating Patients #1, #2, #3 AND #4);

> The drafting of letters on behalf of the HOSPITAL, and submitting same to HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY, objecting to / disputing their allegations (i.e., to the effect that the HOSPITAL owed refunds to HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA

39

INSURANCE COMPANY for the payments of the HOSPITAL's claims for treating Patients #1, #2, #3 AND #4);

➢ The drafting of letters on behalf of the HOSPITAL, and submitting same to HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY, making demand for the remaining amounts still owed to the HOSPITAL by HUMANA HEALTH PLAN OF TEXAS, INC. and / or HUMANA INSURANCE COMPANY(i.e., for their underpayments of the HOSPITAL's claims for treating Patients #1, #2, #3 AND #4); and

➢ Filing and prosecuting this lawsuit, on behalf of the HOSPITAL and against HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY, asserting claims on behalf of the HOSPITAL for:

• A money judgment in favor of the HOSPITAL for the remaining amounts still owed to the HOSPITAL by HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY(i.e., for their underpayments of the HOSPITAL's claims for treating Patients #1, #2, #3 AND #4); and

• A Declaratory Judgment against HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY declaring that the HOSPITAL does not owe any refunds to HUMANA HEALTH PLAN OF TEXAS, INC. and / or HUMANA INSURANCE COMPANY(i.e., for any of their payments of the HOSPITAL's claims for treating Patients #1, #2, #3 AND #4).

104.    The HOSPITAL / Plaintiff hereby sues Defendants to recover equitable and just attorneys fees pursuant to Chapter 37 of TEXAS CIVIL PRACTICE & REMEDIES CODE (i.e., for Declaratory Judgment); and the Plaintiff also sues Defendants to recover reasonable and customary attorneys fees pursuant to Chapter 38 of the TEXAS CIVIL PRACTICE & REMEDIES CODE (i.e., for a money judgment).

105.    In this respect, the HOSPITAL / Plaintiff will show that it has agreed to pay its attorneys reasonable fees for the necessary legal services they perform on behalf of the HOSPITAL with respect to the matters made the basis of this lawsuit; and the HOSPITAL / Plaintiff will show that the attorneys fees for the necessary legal services will, in reasonable probability, be not less than:

➢ $250,000.00 for the necessary legal services the attorneys perform on behalf of the HOSPITAL, through the trial and judgment being entered in this lawsuit;

➢ An additional $100,000 for the necessary legal services the attorneys perform on behalf of the HOSPITAL, from the conclusion of the trial and entry of judgment up through an opinion being rendered in any Court of Appeal; and

40

➢ An additional $100,000 for the necessary legal services the attorneys perform on behalf of the HOSPITAL, from the date an opinion is rendered in any Court of Appeal up through the conclusion of any Appeal to the Texas Supreme Court.

## RIGHT TO AMEND

106.   The HOSPITAL specifically reserves the right to amend these pleadings pursuant to pre-trial discovery, upon order of the Court, or as Plaintiff's attorneys deem appropriate.

## REQUEST FOR DISCLOSURE

107.   Under TEXAS RULE OF CIVIL PROCEDURE 194, the HOSPITAL requests that HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY both disclose, within 50 days of the service of this Original Petition, the information or material described in Rule 194.2.

## PRAYER

WHEREFORE, PREMISES CONSIDERED Plaintiff, Innova Hospital San Antonio, L.P., requests that Defendants HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY be cited to appear and answer; and that, after trial or other hearing on any dispositive motion, Plaintiff have judgment against Defendants, jointly and severally, for the following:

(i)   A Declaratory Judgment against HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY declaring that the HOSPITAL / Plaintiff does not owe any refunds to HUMANA HEALTH PLAN OF TEXAS, INC. and/or HUMANA INSURANCE COMPANY for any of their payments of the HOSPITAL's claims for treating Patients #1, #2, #3 AND #4.

(ii)   A money judgment against HUMANA HEALTH PLAN OF TEXAS, INC. and HUMANA INSURANCE COMPANY, jointly and severally, for:

➢ All of the Plaintiff's actual damages for amount of the underpaid claims (i.e., based upon the contacted rates which should have been paid, but were not);

➢ Pre-judgment interest on all damages at the highest legal rate;

➢ Equitable and just attorney's fees, through trial and all levels of appeal, for the Declaratory Judgment cause of action, pursuant to Chapter 37 of TEXAS CIVIL PRACTICE & REMEDIES CODE;

➢ Reasonable and customary attorney's fees, through trial and all levels of appeal, for the Breach of Contract and Suit On Debt causes of action, pursuant to Chapter 38 of TEXAS CIVIL PRACTICE & REMEDIES CODE;

41

➤ All costs of court;

➤ Post judgment interest at the highest legal rate; and

(iii) Such other and further relief, general or special, legal or equitable, to which Plaintiff is justly entitled.

Respectfully submitted,

SULLINS, JOHNSTON, ROHRBACH & MAGERS

By: _Randal L. Payne_

RANDAL L. PAYNE, TBA#15061000
MICHAEL J. DULANEY, TBA#24059698
2200 Phoenix Tower
3200 Southwest Freeway
Houston, Texas 77027
Tel 713.521.0221
Fax 713.521.3242

ATTORNEYS FOR PLAINTIFF, INNOVA HOSPITAL SAN ANTONIO, L.P.

42

 

Dear Provider:

Welcome to Three Rivers Provider Network. Enclosed with this contract, is a Quick Reference guide to assist your staff in working with the TRPN members.

We request that you send all updates monthly, so we can forward this information to our payers. We notify our payers of the changes, additions, and terminations on every fifteenth of the month. These updates may be mailed, faxed (619-230-1500), or emailed to TrpnDataEntry@aol.com to the attention of Veronica Pimentel. If you have any questions, comments or concerns please contact Mylessa Esmele at (619-230-8695).

Again, we welcome you to Three Rivers Provider Network and look forward to a long and mutually prosperous relationship.

Sincerely,

Blaine D. Pollock

Blaine D. Pollock,
President

1620 5th Avenue San Diego, CA 92101
(619) 230-0502 · 800 966 8776 · FAX 619 230-1500

EXHIBIT
A

# THREE RIVERS PROVIDER NETWORK
## Quick Reference Guide

1620 5th Avenue Suite 900
San Diego, CA 92101

**Provider Contracting:**

Cande Quintana                619-230-0502
cquintana@trpnppo.com

Micky Musolf                   619-230-0581
mmusolf@trpnppo.com

Susan Antonio                  619-233-2883
santonio@trpnppo.com

Aurora Bragdon                 619-233-2882
abragdon@trpnppo.com

Lani Hazelton                  619-358-9429
lhazelton@trpnppo.com

Regina Wolgamott               619-564-8264
rwolgamott@trpnppo.com

Christopher Majomut            619-269-3796
cmajomut@trpnppo.com

Jim Benuska                    619-230-0530
jbenuska@trpnppo.com

Cathy Magana                   619-233-2884
cmagana@trpnppo.com

Colin Sinclair                 619-230-0424
csinclair@trpnppo.com

**Provider Relations/Updates:**

Mylessa Esmele                 619-230-8695
mesmele@trpnppo.com

Veronica Pimentel
trpndataentry@trpnppo.com

**Contracting & Appeals Contact:**

Customer Service               800-966-8776

Trinh Mach                     619-546-8452
mach@trpnppo.com


EXHIBIT
A

Deborah Hay      619-230-0503
dhay@trpnppo.com

Marci Lopez      619-230-0529
mlopez@trpnppo.com

Camille Wheeler      619-230-0769
cwheeler@trpnppo.com

Tashima Hooker      619-756-6034
thooker@trpnppo.com

Erika Fuerte      619-230-6616
efuerte@trpnppo.com

Arthur Maldonado      619-230-0534
amaldonado@trpnppo.com

Rachel Boxleitner      619-756-6031
rboxleitner@trpnppo.com

Leyna Ragsdale      619-230-0532
lragsdale@trpnppo.com

| | |
|---|---|
| Medical Management: | See ID Card |
| Customer/Member Services: | See ID Card |
| Claims Inquiry: | See ID Card |
| Prior Auth./Benefits & Eligibility | See ID Card |
| Co-pays: | See ID Card |
| Electronic Claims Submission | Available, but not required |
| Mail Claims to: | See ID Card |
| Claim Filing Limit: | 180 days from date of service |
| Claim Appeal Limit: | 90 days from date of receipt of payment |
| Claim Appeals/Problems: | 800-966-8776<br>FAX: 619-230-1500 |
| Contracted Labs: | see web site<br>www.trpnppo.com |



EXHIBIT
A

Contracted Radiology:                    see web site
                                         www.trpnppo.com

TRPN does not assign Primary Care Providers

Contracted Hospitals                     see web site
                                         www.trpnppo.com



## TRPN QUICK REFERENCE GUIDE

**Ownership:** Blaine Pollock, President

**Provider Information:** TRPN clients agree to list all participating providers in provider directories and maintain the information as long as the agreement is in effect. TRPN has a new web site where members and providers may access providers nationally: www.trpnppo.com

**Payment:** TRPN shall require Clients to process and reimburse the "Provider" within thirty (30) calendar days upon the receipt by the Claims Administrator of *clean* claims.

**Medical Records:** If required to process claim, records shall be requested within ten (10) calendar days of original receipt of claim, such claims shall then be processed promptly and payment made to Provider within ten (10) calendar days of the receipt by the Claims Administrator of the requested records.

**Reimbursement:** Providers and facilities will be paid according to reimbursement information as listed in Attachment A of the contract for all covered service



EXHIBIT
A

# THREE RIVERS PROVIDER NETWORK
## AGREEMENT WITH

### INNOVA HOSPITAL SAN ANTONIO

This Agreement is made this 14th day of February 2007, by and between Three Rivers Provider Network, Inc., a Nevada Corporation ("TRPN") and Innova Hospital San Antonio, a hospital for health care services. TRPN contracts with hospitals, physicians, ancillaries and entities hereinafter referred to as "Facility" rendering medical and health care services at pre-determined rates as follows:

1. Clients, Covered Services, Contract Rates: TRPN contracts with insurance companies, third party administrators, health plans, individuals and entities hereinafter referred to as "Clients" that directly or indirectly access TRPN contracted providers for covered services. Covered Services shall include all services that are medically necessary including health, workers' compensation, automobile and general liability. The rate used in conjunction with this Agreement will be at twenty percent (20%) discount off of the facilities usual charge for covered services less any applicable copayments or insurance or deductibles. Clients are obligated to make payment directly to facilities only at the contracted rate as payment in full. Facility shall not balance bill the patient upon receipt of payment in full at the contracted rate. TRPN has no responsibility to make payments on behalf of Clients. Payments shall be made within thirty (30) calendar days of receipt of clean claim. Where a state mandated fee schedule exists, provider agrees to accept a ten percent (10%) discount below the state schedule. Payments made and cashed by the provider shall be accepted as payment in full providing the total payment including the member's portion is not less than the contracted rate.

2. Licenses, Standards of Care: Facility agrees to deliver health care services that meet all legal standards of care complying with applicable Federal, State and Local laws and maintains the standards of NCQA and/or JCAHO. The provider is delegated by TRPN to carry out and/or assign credentialing responsibilities. Evidence of such licenses, certificates and standards shall be made available to TRPN upon request.

3. Term and Termination: This Agreement shall continue in effect for a period of two (2) years with automatic successive one (1) year terms. This Agreement may be terminated by either party without cause with a ninety (90) day prior written notice to the other party at the mailing addresses listed under the signatures. This Agreement may be immediately terminated with cause by TRPN should facility lose applicable licenses, malpractice coverage, fail to honor the applicable contracted rates pursuant to this Agreement, or if any information provided in Attachment A is illegible, incomplete, or invalid.

4. Dispute Resolution: This Agreement shall be construed and interpreted in accordance with the laws of the State of Nevada. Provider agrees to meet and confer in good faith to resolve any disputes that may arise under this Agreement. If a dispute between TRPN and Provider arises out of this Agreement and is not resolved, either party may submit the dispute to arbitration which shall be commenced and conducted in accordance with the Rules of Practice and Procedures of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") as in effect at the time ("JAMS Rules").

5. Attachment A: All information provided in Attachment A of this Agreement is complete and accurate to the best of Facilities knowledge and Facility shall immediately notify TRPN of any changes thereto.

6. Faxed Signatures: The parties agree that facsimile signatures of authorized representatives of the parties shall legally bind the parties to the terms and conditions of this Agreement as if the signatures were original and shall be considered evidence of a fully executed Agreement.

Case Number: 2013CI14897      Document Type: ENTIRE FILE CERTIFIED


EXHIBIT
A

IN WITNESS WHEREOF, the authorized parties hereto have executed this Agreement and intend to be bound thereby.

Hospital Name (please print):

_INNOVA HOSPITAL SAN ANTONIO_

Signature: _CC_

Name: _CHUCK CAVL_

Title: _CEO_

Date: _3/19/07_

TRPN: ATTN: LANI HAZELTON CONSULTING

THREE RIVERS PROVIDER NETWORK, INC.

Signature: _[signature]_

Name: Todd Breeden Chief Operating Officer

Mailing Address: 1620 Fifth Avenue Suite 900

San Diego, CA 92101    Phone: (619) 230-0530

Date: _4-5-2007_

## Attachment A: HOSPITAL INFORMATION

(Please attach a roster of all the provider's names, titles, and locations employed by the facility: Use Addendum A)

Tax ID#: _20-2198427_

National Provider Identifier (NPI):

(If there is more than one NPI Number, please attach a listing.)

Specialty: _Acute_

Primary Address: _4243 East Southcross Bl_
_San Antonio, TX 78223_

Phone: _(210) 368-7400_ Fax: _(210) 368-7446_

Email: _tLopez @ innovahealth.net_

Other Facility and/or Billing Address?  Yes ☐ / No ☐
If "yes", attach page with additional information

Hospital Affiliations (list name, date and type):

_____

_____

_____

Page 2

EXHIBIT
A

DISTRICT COURT OF BEXAR COUNTY, TX

| First | Last | Degree | Specialty | Practice Address | City |
|---|---|---|---|---|---|
| Sheldon | Abbatt | MD | Bariatric Surgery General | 8038 Wurzbach Rd, Stuie 210 | San Antonio |
| Audencio | Adams | MD | Bariatric Surgery General | 13711 East Freeway #109 | Houston |
| Garrett | Andersen | MD | Surgery | P.O. Box 29441 | San Antonio |
| James | Andry | MD | Radiology | 2727 Babcock #A | San Antonio |
| Fernando | Avila | MD | IM/Pulmonology | 700 So. Saint Mary's Street | San Antonio |
| Amanda | Barrella | MD | Anesthesiology | 45 N.E. Loop 410, #900 | San Antonio |
| Lorenzo | Benavides | MD | Anesthesiology | 45 N.E. Loop 410, #900 | San Antonio |
| Richard | Benedict | MD | Radiology | P.O. BOX 29441 / 8401 Datapoint #600 | San Antonio |
| Steven | Bowers | MD | General Surgery | 4647 Medical Drive | San Antonio |
| Gregory | Boys | MD | Radiology | P.O. Box 29441 / 8401 Datapoint 3600 | San Antonio |
| Ricardo | Castillo | DO | Emergency Medicine | 4243 E Southcross, #205 | San Antonio |
| Ramiro | Cavazos | MD | Bariatric Surgery/General | | San Antonio |
| Robert | Ching | DO | Surgery | 8711 Village Dr. #202 | San Antonio |
| John | Clement, IV | MD | Internal Medicine | 4243 E Southcross #201 | San Antonio |
| Keith | Crow | MD | Radiology | P.O. Box 29441 | San Antonio |
| Michael | Duan | MD | Radiology | 8401 Datapoint Dr. #600 | San Antonio |
| Jude | Espinoza | MD | Anesthesiology | 45 N.E. Loop 410, #900 | San Antonio |
| | | MD | IM/Cardiology | 45 N.E. Loop 410, #900 | San Antonio |
| | | MD | Bariatric Surgery/General | 4045 E. Southcross | San Antonio |
| Steven | Fath | MD | Surgery | 1346 E. Walnut | Seguin |
| Alfredo | Fialio | MD | IM/Nephrology | 1222 McCullough Ave #300 | San Antonio |
| Nicholas | Forero | MD | IM/Nephrology | 2897 NE LOOP 410 #405 | San Antonio |
| Peter | Fornos | MD | IM/Pulmonology | 3711 Camden #504 | San Antonio |
| Kevin | Fradkin | MD | General Surgery | 4242 E Southcross #1 | San Antonio |
| Morris | Franklin, Jr | MD | General Surgery | 4242 E. Southcross, #1 | San Antonio |
| Terence | Fried | MD | IM/Nephrology | 116 Gallary Circle #201 | San Antonio |
| David | Garcia | MD | IM / Gastroenterology | P.O. BOX 78003B / 540 Madison #210 | San Antonio |
| James | Gilley | MD | Radiology | P.O. Box 29441 | San Antonio |
| Jeffrey | Glass | MD | General Surgery | 4242 E. Southcross, #1 | San Antonio |
| David | Golden | MD | Radiology | P.O. Box 29441 | San Antonio |
| John | Gonzalez | MD | Bariatric Surgery/General | 4242 E Southcross #1 | San Antonio |

EXHIBIT

A

| First | Last | Degree | Specialty | Practice Address | City |
|---|---|---|---|---|---|
| Michael | Gerali | MD | Radiology | P.O. Box 29441 | San Antonio |
| George | Hampel | MD | Radiology | P.O. BOX 29441 / 8401 Datapoint #600 | San Antonio |
| Minerva | Silvera | MD | Anesthesiology | 45 N.E. Loop 410, #900 | San Antonio |
| Mark | Healy | MD | Radiology | P.O. BOX 29441 / 8401 Datapoint #600 | San Antonio |
| Eric | Hendrick | MD | Radiology | P.O. Box 29441 | San Antonio |
| James | Humphreys | MD | Pathology | 301 N Frio | San Antonio |
| Harmon | Kelley | MD | Gynecology | 4115 E. Southcross | San Antonio |
| Margaret | Kelley | MD | Gynecology | 4115 E. Southcross | San Antonio |
| Paul | Kerby | MD | Anesthesiology | 45 N.E. Loop 410, #900 | San Antonio |
| Suresh | Koneru | MD | Plastic Surgery | 4127 E. Southcross, #3 | San Antonio |
| Joshua C. | Livingston | MD | Anesthesiology | 45 N.E. Loop 410, #900 | San Antonio |
| Joaquin | Martinez | MD | Anesthesiology | 45 N.E. Loop 410, #900 | San Antonio |
| Amit | Mehta | MD | Radiology | P.O.Box 29441 / 8401 Datapoint #600 | San Antonio |
| Barry | Menick | MD | Radiology | P.O. Box 29441 | San Antonio |
| Michael | Middlebrook | MD | Radiology | P.O. Box 29441 | San Antonio |
| Joseph | Miller | MD | Radiology | P.O. BOX 29441 / 8401 Datapoint #600 | San Antonio |
| Fernando | Miranda | MD | Bariatric Surgery/ General Surgery | 4141 Southwest Freeway, Suite 400 | Houston |
| William | Mok | MD | Anesthesiology | 45 N.E. Loop 410, #900 | San Antonio |
| Mark | Munoz | MD | Anesthesiology | 45 N.E. Loop 410, #900 | San Antonio |
| Patrick | O'Connor | MD | Ophthalmology | 4025 E. Southcross Blvd, #12 | San Antonio |
| Nilesh | Patel | MD | Bariatric Surgery/ General Surgery | 4243 E Southcross | San Antonio |
| Ricardo | Ramirez | MD | Anesthesiology | 45 N.E. Loop 410, #900 | San Antonio |
| James | Reid | MD | Anesthesiology | 45 N.E. Loop 410, #900 | San Antonio |

OF BEXAR COUNTY, TX

EXHIBIT
A

Case Number: 2013CI14897

Document Type: ENTIRE FILE CERTIFIED

[Seal: DISTRICT COURT OF BEXAR COUNTY, TX]

| First | Last | Degree | Zip | Office Phone | Fax | Original Cred Date | Provisional review date | Re-appointment date | Staff Status |
|---|---|---|---|---|---|---|---|---|---|
| Audencio | Alanis | MD | 77015 | (713)455-5531 | (713)455-4321 | 4/14/2005 | 4/21/2008 | 4/21/2008 | Provisional |
| Garrett | Andersen | MD | 78229 | (210)616/7798 | (210)616-7799 | 2/26/2007 | | | Provisional |
| James | Andry | MD | 78229 | (210)614-6000 | (210)614-7728 | 5/19/2006 | 5/19/2008 | 5/19/2008 | Consulting |
| Fernando | Avila | MD | 78205 | (210)223-1181 | (210)226-1268 | 4/4/2005 | 4/21/2006 | 4/21/2008 | Active |
| Amanda | Barrella | MD | 78216 | (210)375-7730 | (210)375-7799 | 7/7/2005 | 6/16/2006 | 6/16/2008 | Courtesy |
| Lorenzo | Benavides | MD | 78216 | (210)375-7720 | (210)375-7799 | 6/1/2005 | 4/21/2006 | 4/21/2008 | Active |
| Richard | Benedikt | MD | 78216 | (210)616-7796 | (210)616-7799 | 11/11/2005 | 4/21/2006 | 4/21/2008 | Active |
| Steven | Bowers | MD | 78229 | (210) 592-0230 | (210) 292-3883 | 11/17/2006 | | | Provisional |
| Gregory | Boys | MD | 78229 | (210)616-7796 | (210)616-7799 | 6/16/2006 | | | Provisional |
| Ricardo | Castillo | DO | 78222 | (210)617-4708 | (210)617-4075 | 4/4/2005 | 4/21/2008 | 4/21/2008 | Active |
| Ramiro | Cavazos | MD | 78217 | (210)651-0303 | (210)651-0302 | 4/21/2006 | 5/19/2006 | 5/19/2008 | Provisional |
| Robert | Ching | DO | 78228 | (210)337-2800 | (210)337-2844 | 5/9/2006 | 5/18/2008 | 5/19/2008 | Active |
| John | Clement, IV | MD | 78229 | (210)616-7796 | (210)616-7799 | 2/26/2007 | 2/26/2007 | 2/26/2009 | Provisional |
| Keith | Crow | MD | 78229 | (210)227-7293 | (210)227-7050 | 5/9/2005 | 4/21/2006 | 4/21/2008 | Active |
| Michael | Duan | MD | 78216 | (210)375-7730 | (210)375-7799 | 7/15/2005 | 6/16/2006 | 6/16/2008 | Courtesy |
| Jude | Espinoza | MD | 78222 | (210)333-2031 | (210)387-2573 | 5/9/2005 | 4/21/2006 | 4/21/2008 | Consulting |
| Steven | Fath | MD | 78155 | (830)303-8800 | (830)303-8801 | 5/19/2006 | | | Provisional |
| Alfredo | Fiallo | DO | 78212 | (210)228-0743 | (210)228-8749 | 1/9/2005 | 2/26/2007 | 2/26/2009 | Consulting |
| Nicholas | Forero | MD | 78217 | (210)664-7326 | (210)580-8232 | 1/9/2006 | 2/26/2007 | 2/26/2009 | Consulting |
| Peter | Forros | MD | 78216 | (210)227-7293 | (210)227-7050 | 5/9/2005 | 5/19/2006 | 5/19/2008 | Consulting |
| Kevin | Frankin | MD | 78222 | (210)333-7510 | (210)333-1912 | 9/15/2006 | | | Provisional |
| Morris | Franklin, Jr | MD | 78222 | (210)333-7510 | (210)333-1912 | 8/26/2005 | 9/15/2006 | 9/15/2008 | Provisional |
| Terence | Fried | MD | 78258 | (210)228-0743 | (210)228-8749 | 1/9/2006 | 2/26/2007 | 2/26/2009 | Consulting |
| David | Garcia | MD | 78278 | (210)481-9618 | (210)403-2498 | 2/10/2006 | 2/10/2006 | | Provisional |
| James | Gilley | MD | 78229 | (210)616-7796 | (210)616-7799 | 2/26/2007 | | | Provisional |
| Jeffrey | Glass | MD | 78222 | (210)333-7510 | (210)333-1912 | 8/26/2005 | 9/15/2006 | 9/15/2008 | Active |
| David | Golden | MD | 78229 | (210)616-7796 | (210)616-7799 | 2/26/2007 | | | Provisional |
| John | Gonzalez | MD | 78222 | (210)333-7510 | (210)333-1912 | 11/11/2005 | 11/17/2006 | 11/17/2008 | Provisional |

EXHIBIT A

| First | Last | Degree | Zip | Office Phone | Fax | Original Cred Date | Provisional review date | Re-appointment date | Staff Status |
|---|---|---|---|---|---|---|---|---|---|
| Michael | Grotewiel | MD | 78229 | (210)616-7796 | (210)616-7799 | 2/26/2007 | | | Provisional |
| George G. | Hampus | MD | 78229 | (210)616-7796 | (210)616-7799 | 6/14/2005 | 6/16/2006 | 6/16/2008 | Active |
| Mihaela | Savage | MD | 78216 | (210)375-7730 | (210)375-7799 | 8/18/2006 | 8/18/2006 | 8/18/2008 | Active |
| Mark | Prealy | MD | 78229 | (210)616-7796 | (210)616-7799 | 6/14/2006 | 6/16/2006 | 6/16/2008 | Active |
| Eric | Hendrick | MD | 78229 | (210)616-7796 | (210)616-7799 | 2/26/2007 | | | Provisional |
| James | Humphreys | MD | 78207 | (210)477-5600 | (210)735-1305 | 7/7/2005 | 6/16/2006 | | Consulting |
| Harmon | Kelley | MD | 78222 | (210)333-0532 | (210)333-2292 | 8/18/2006 | 6/16/2006 | 6/16/2008 | Provisional |
| Margaret | Kelley | MD | 78222 | (210)333-0532 | (210)333-2292 | 8/18/2006 | | | Provisional |
| Paul | Keroy | MD | 78216 | (210)375-7760 | (210)375-7799 | 5/16/2006 | 5/19/2006 | 5/19/2008 | Courtesy |
| Suresh | Koneru | MD | 78222 | (210)499-5900 | (210)333-4975 | 8/15/2005 | 8/18/2006 | 8/18/2008 | Active |
| Joshua C. | Livingston | MD | 78216 | (210)375-7720 | (210)375-7799 | 8/18/2006 | | | Provisional |
| Joaquin | Martinez | MD | 78216 | (210)375-7720 | (210)375-7799 | 4/4/2005 | 4/21/2006 | 4/21/2008 | Active |
| Amit | Mehta | MD | 78229 | (210)616-7796 | (210)616-7799 | 8/16/2006 | 4/21/2006 | | Provisional |
| Barry | Merick | MD | 78229 | (210)616-7796 | (210)616-7799 | 2/26/2007 | | | Provisional |
| Michael | Middlebrook | MD | 78229 | (210)616-7796 | (210)616-7799 | 2/26/2007 | | | Provisional |
| Joseph | Miller | MD | 78229 | (210)616-7796 | (210)616-7799 | 5/9/2005 | 4/21/2006 | 4/21/2008 | Active |
| Fernando | Miranda | MD | 77027 | (713)960-0590 | (713)960-0722 | 4/14/2005 | 4/21/2006 | 4/21/2008 | Provisional |
| William | Mick | MD | 78216 | (210)375-7790 | (210)375-7799 | 6/14/2005 | 6/16/2006 | 6/16/2008 | Courtesy |
| Patrick | Munoz | MD | 78216 | (210)375-7720 | (210)375-7799 | 11/11/2005 | 11/17/2006 | 11/17/2008 | Active |
| Patrick | O'Connor | MD | 78222 | (210)337-1910 | (210)337-1844 | 5/9/2005 | 4/21/2006 | 4/21/2008 | Active |
| Nilesh | Patel | MD | 78222 | (210)368-7428 | (210)368-7417 | 2/10/2006 | | | Provisional |
| Ricardo | Ramirez | MD | 78216 | (210)375-7720 | (210)375-7799 | 2/26/2007 | | | Provisional |
| James | Reid | MD | 78216 | (210)375-7720 | (210)375-7799 | 8/15/2005 | 8/18/2006 | 8/18/2008 | Active |



EXHIBIT
A

| First | Last | Degree | Term. Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Steven | Abugel | MD | | | | | | | | |
| Audencio | Alanis | MD | | | | | | | | |
| Garrett | Andersen | MD | | | | | | | | |
| James | Andry | MD | | | | | | | | |
| Fernando | Avila | MD | | | | | | | | |
| Amanda | Barrella | MD | | | | | | | | |
| Lorenzo | Benavides | MD | | | | | | | | |
| Richard | Benedikt | MD | | | | | | | | |
| Steven | Bowers | MD | | | | | | | | |
| Gregory | Boys | MD | | | | | | | | |
| Ricardo | Casillo | DO | | | | | | | | |
| Ramiro | Cavazos | MD | | | | | | | | |
| Robert | Ching | DO | | | | | | | | |
| John | Clement, IV | MD | | | | | | | | |
| Keith | Crow | MD | | | | | | | | |
| Michael | Duan | MD | | | | | | | | |
| Judie | Espimoza | MD | | | | | | | | |
| Steven | Faith | MD | | | | | | | | |
| Alfredo | Fiallo | MD | | | | | | | | |
| Nicholas | Forero | MD | | | | | | | | |
| Peter | Fornos | MD | | | | | | | | |
| Kevin | Franklin | MD | | | | | | | | |
| Morris | Franklin, Jr | MD | | | | | | | | |
| Terence | Fried | MD | | | | | | | | |
| David | Garcia | MD | | | | | | | | |
| James | Gilliey | MD | | | | | | | | |
| Jeffrey | Glass | MD | | | | | | | | |
| David | Golden | MD | | | | | | | | |
| John | Gonzalez | MD | | | | | | | | |

DISTRICT CLERK'S OFFICE BEXAR COUNTY, TX

EXHIBIT
A

OF BEXAR COUNTY, TX

| First | Last | Degree | Term Date | | | | | | | |
|-------|------|--------|-----------|---|---|---|---|---|---|---|
| Michael | Granato | MD | | | | | | | | |
| George | Hampel | MD | | | | | | | | |
| Michael | Sharpe | MD | | | | | | | | |
| Mark | O'Reilly | MD | | | | | | | | |
| Eric | Hendrick | MD | | | | | | | | |
| James | Humphreys | MD | | | | | | | | |
| Harmon | Kelley | MD | | | | | | | | |
| Margaret | Kelley | MD | | | | | | | | |
| Paul | Kerby | MD | | | | | | | | |
| Suresh | Koneru | MD | | | | | | | | |
| Joshua C. | Livingston | MD | | | | | | | | |
| Joaquin | Martinez | MD | | | | | | | | |
| Amit | Mehta | MD | | | | | | | | |
| Barry | Menick | MD | | | | | | | | |
| Michael | Middlebrook | MD | | | | | | | | |
| Joseph | Miller | MD | | | | | | | | |
| Fernando | Miranda | MD | | | | | | | | |
| William | Mok | MD | | | | | | | | |
| Mark | Munoz | MD | | | | | | | | |
| Patrick | O'Connor | MD | | | | | | | | |
| Nilesh | Patel | MD | | | | | | | | |
| Ricardo | Ramirez | MD | | | | | | | | |
| James | Reid | MD | | | | | | | | |



EXHIBIT
A

DISTRICT COURT OF BEXAR COUNTY, TX — FIRST

| First | Last | Degree |
|---|---|---|
| Steven | Abbate | MD |
| Audiero | Adams | MD |
| Garrett | Andersen | MD |
| James | Andry | MD |
| Fernando | Avila | MD |
| Amanda | Barrella | MD |
| Lorenzo | Benavides | MD |
| Richard | Benedikt | MD |
| Steven | Bowers | MD |
| Gregory | Boys | MD |
| Ricardo | Castillo | DO |
| Ramiro | Cavazos | MD |
| Robert | Ching | DO |
| John | Clement, IV | MD |
| Keith | Crow | MD |
| Michael | Duan | MD |
| Jude | Espinoza | MD |
| Steven | Fath | MD |
| Alfredo | Fialo | MD |
| Nicholas | Forero | MD |
| Peter | Fornos | MD |
| Kevin | Franklin | MD |
| Morris | Franklin, Jr | MD |
| Terence | Fried | MD |
| David | Garcia | MD |
| James | Gilley | MD |
| Jeffrey | Glass | MD |
| David | Golden | MD |
| John | Gonzalez | MD |


EXHIBIT A

| First | Last | Degree | | | | |
|-------|------|--------|---|---|---|---|
| Michael | Gerard | MD | | | | |
| Gregg C. | Barrera | MD | | | | |
| Mihaela | Trici Sharpe | MD | | | | |
| Mark | Fealy | MD | | | | |
| Eric | Hendrick | MD | | | | |
| James | Humphreys | MD | | | | |
| Harmon | Kelley | MD | | | | |
| Margaret | Kelley | MD | | | | |
| Paul | Kerby | MD | | | | |
| Suresh | Koneru | MD | | | | |
| Joshua C. | Livingston | MD | | | | |
| Joaquin | Martinez | MD | | | | |
| Amit | Mehta | MD | | | | |
| Barry | Mennik | MD | | | | |
| Michael | Middlebrook | MD | | | | |
| Joseph | Miller | MD | | | | |
| Fernando | Miranda | MD | | | | |
| William | Mok | MD | | | | |
| Mark | Munoz | MD | | | | |
| Patrick | O'Connor | MD | | | | |
| Nilesh | Patel | MD | | | | |
| Ricardo | Ramirez | MD | | | | |
| James | Reid | MD | | | | |

OF BEXAR COUNTY, TX



# Three Rivers Provider Network National Client List





Welcome to TRPN's National Client List. Below is the most current National Client list for The Three Rivers Provider Network. If you have any questions regarding our client list please contact our Provider Relations department at: 619-600-4824 or email them at: trpndataentry@trpnppo.com

Wednesday, May 8, 2013

### Three Rivers Provider Network National Client List

(AAA) American Automobile Assoc.

3hab Medical Management

4most

7-Eleven, Inc.

A & I Benefit Plan Administrator

A.E.B.S.,Co.

A1 International Foods

Aaon Inc.

ABPA

Acadamic Risk

Access General Insurance

Acordia

ACS Benefit Services, Inc.

ACS Complq

Actor's Guild

Administrative Concepts Inc.

**Blog Archive**

▼ 2013 (1)

   ▼ May (1)

      Three Rivers Provider Network National Client List...



Administrators West

Adminone Corporation

Advanced Insurance Administrators

Advantek Benefit Administrators

Aegis Administrators

Aetna

AFS Insurance Services, Inc.

AG Administrators

AIG Hawaii Insurance Company, Inc

AIG Insurance Co

AIM Healthcare Services, Inc.

Airborne Freight Corporation

Alaska Airlines

Alaska Electrical H&W

Alaska Forest Association

Alaska Pipe Trades Ual 375

Alaska Teamsters

Alaska Ufcw H&W Trust

Albertsons, Inc.

Alliance International Assistance

Alliant Health Plans

Allied National Companies

Alpha Review Company

Alternative Risk Management

Alzheimer S Association

AMBR/ExamWorks

AMCC Inc

Ameriben Solutions

America First Insurance Company

America West Airlines,Inc

American Administrators

American Ambassador Casualty Company

(underwriting co. in GoAmerica group)

American Benefits Association

American Benefits Management

American Claims Exchange

American Commerce Insurance Group

American Community Mutual

American Crystal Sugar Co.

American Economy Insurance

Company

American Fire and Casualty Company





EXHIBIT

B

American Foodservice Corp.

American Golf Corporation

American Health Holding

American Medical Auditors

American Medical Bill Review

American Medical Security Life Insurance Co.

American Modern Insurance Group

American National P&C

American National Property & Casualty

American Postal Workers Union (Apwu)

American Professional Risk Services

American Republic Insurance Company

American Solutions Group

American States Insurance Company

American States Insurance Company of Texas

American States Lloyds Insurance Company

American States Preferred Insurance Company

American Tire Distributors, Inc.

American Trust Administrators

American Underwriters

Americomp

Amerihealth Administrators

Anchor Benefit Consulting

Antares Management Solutions

APA Partners Inc.

Applebee's International, Inc.

Argo Insurance

Argo Select

Argonaut Insurance

Arizona Foundation For Medical Care

Artisan Claims

Asert Benefit Services

Asmed Health Partners

ASR Admin Systems Wp

ASR Corporation

Associated Administrators, Inc

Associated Plan Administrators

Association Insurance Trust

Assurant / Fortis

Assured Assistance

AT&T Wireless Services, Inc.

Atlanticare Adminstrators





http://rpnationalclientlist.blogspot.com/

Atlas Administrators, Inc.

Auto Injury Solutions

Auto One Insurance Company

Autozone, Inc.

Avis Budget Group, Llc

Avmed Health-Plans

Avmed North

Avomark Insurance Company

Avon Products, Inc.

Beacon Risk Strategies

Benefit Assistance

Benefit Coordinators Corporation

Benefit Management Systems

Benefit Plan Administrators

Benefit Planning, Inc

Benefit Services, Inc.

Benefit Solutions

Benefit Source

Benefit Systems & Services, Inc.

Benesight / Fiserve

Berkley Specialty Underwriting Bme Gateway

Berkley Specialty Underwritting Managers, Llc

Best Life

Blue Bell Creameries

Blue Shield Of California

BME Gateway

BMI Health Plans

Bob Mccloskey Insurance

Boeing Company

Bon Appetit Management Company

Bridge Benefits, Inc.

Bridgefield Casualty Insurance Company

(underwriting company in Summit group)

Bridgefield Employers Insurance Company

Bridgestone

Brokerage Concepts

Brotherhood Mutual Insurance Broadspire

Brown Rehabilitation

Brown Review

BSI Florida

Buckeye Insurance Group

Business First Insurance Company





http://trpmnationalclientlist.blogspot.com/

Butler Benefit Service

C.L. Frates & Company

Cam Administrative Services

Cambridge Integrated Services

Canassistance

Capital District Physician Health Plans

Capitol Administrators

Caprock Claims Management

Care Choices

Careington

Careworks, USA

Carpenters Southwest Administrative Group

CBA, Inc.

CBCA

CBSA

CCA

CCL & H

CCSI

CDS Group Health

Celina Insurance Group

Cement Masons Nevada

Cement Masons Of Southern Ca

Central Benefits Mutual

Century Health Solutions

Ceres Health Care, Inc.

Cerner Corporation

Charter Management Services

Chatwins Administration

Chubb Insurance Company

CIGNA

Claims Benefits, Inc.

Clark County Firefighters (Nv)

Cleaners Hanger Company

Cnic Health Solutions

Coastalcomp Health Networks

Coca Cola (Manhattan)

Coca Cola Company

Colonial Life Insurance

Colorado Casualty Insurance Company

Combined Life Insurance Company

Commerce Insurance Company

Commercial Casualty Insurance Company, Inc





Commercial Travelers Ins.

Community Care

Comp I.Q.

Comp Usa, Inc.

Companion Property & Casualty Group

Complete Benefit Solutions

Comprehensive Behavioral Care

Comprehensive Care Services

Compstar

Comptech, Llc.

Concise Bill Management

Conseco

Conservent

Consolidated Insurance Company

Consolidated Service Group

Construction Ind & Laborers H & W

Construction Teamsters

Container Store, The

Contract Claims Services, Inc

Cooperative Mutual Insurance Co

Coresource

Cornerstone Benefits Administrations, Inc

Cornerstone National Insurance Company

Cornerstone Preferred

Corporate Benefits Services

Corporate Care Management

Corvel

Cost Containment Strategies, Inc.

Cost Pro

Costal Administrative Services

Costco Wholesale Corporation

Cottingham & Butler

Countryway Insurance Co.

Coventry Health Care

Crawford & Company

Cross Summit Enterprises

Culligan Intl Co.

Cwi Benefits

Cypress Benefit Administrators

D. Edward Wright, Inc.

Definity Health Plans

Del Monte Food Company





Delta Air Lines Global Svcs., Inc.

Denny's Restaurant Program

Destiny Health

Dh Evans Associates, Inc.

Dillard Department

Director's Guild

Diversified Administrators Corporation

Dollar General

Dr. Pepper/Seven Up Bottling Group

Drake Insurance Administrators

Dunn And Associates

E.S.I.S.

East Coast Underwriters

EBAM

Ecolab Inc

Electrical Workers H & W

Elite Administration & Insurance Group

Elmco

Emc Insurance

Employee Benefit Administrators

Employee Benefit Concepts

Employee Benefits Services

Employee Plans Llc

Employee Security Inc.

Employers Life Insurance Company

Employers Plan Services

Enabler Managed Care Corporation

Enerco Technologies

Enterprise Group Planning

Equitable Plan Services

Erin Group Administrators

Esurance

Excelsior Insurance Company

Fcci Insurance Group

Federated Mutual

Fic Corporation- Dallas

Fic Corporation- Irvine

Fidelity Insurance Company

Firefighters Family Medical

First Administrators Inc

First Health





9/4/2013
Page 63 of 86

http://trpnationalclientlist.blogspot.com/

First National Insurance Company
of America

Fiserve

Fitzharris

Florida 1st Service Administrators, Inc.

Florida Benefit Administrators

Fmh Benefit Services

Food Giant Supermarkets, Inc.

Fox Everett

Fringe Benefits

Frito-Lay, Inc.

Future Care, Inc.

Gab Robins

Gallagher Benefit Administrators, Inc.

GBSI

Geico Corporation

Gem Administrators

General Insurance Company of
America

Genex Services

Georgia Administrative Services

Gilsbar Insurance Company

Global Assurance

Global Care

Global Excel Management, Inc.

Global Risk Management

Globe American Casualty Company
(underwriting co. in GoAmerica group)

Gmac Insurance

Golden Eagle Insurance Corporation

Golden Rule Insurance Company

Grange Insurance

Great American Insurance Co.

Great Fidelity

Great West Healthcare

Group Administrators

Group Insurance Services Center

Group Resources

Guarantee Trust Life Insurance Company

Guardian





http://trpnnationalclientlist.blogspot.com/

Gulf States AIF, Inc.

Attorney-in-fact for the underwriters at America

First Lloyd's Insurance Company

HAA Preferred Partners

Hawkeye-Security Insurance Company

(formerly Tower Insurance Company, Inc.)

Health Administration Service

Health Choice Of NW Missouri

Health Cost Management

Health Design Plus

Health Future

Health Link

Health Markets

Health Net, Inc

Health New England

Health Plans. Inc.

Health Reinsurance Management Partnership

Health Special Risk

Health Systems Management

Healthcare Direct

Healthcare Resource Group

Healthcomp Administrators

HealthFirst TPA

Healthplan Of Nevada

Healthscope Benefits

Healthstar

HIP Of NY

HMA, Inc.

Horizon Air Industries

HPS Paradigm

Huffy Corporation

Humana

Hyatt Corporation

IAC

IBA

IBEW Southwestern Health & Benefit Fund

Idaho Pipe Trades

Imed Cost Containment Solution, Llc

Imerica Life And Health Insurance Company

Indiana Farm Bureau

Indiana Insurance Company

Indiana Laborers





Indiana Roofers
Inetico
Ingenix
Innovante Benefit Administrators
Innovated Health Strategies
Innovative Claim Solutions
Insurance Administrators Of America
Insurance Company of Illinois
Insurance Design Administrators
Insurance Programmers, Inc.
Insurica Claim Management
Integra Admin Group - Supp
Integrated Claims Administrators
Intel Corporation
Intelligent Medical Solutions, Inc.
Inter-Americas Insurance
Intercom Hrential Corp.
International Medical Group
International Monetary Fund
International Paper
Interstate Brands Corporation
Interstate Hotels & Resorts, Inc.
Intracorp
IPC
Island Group
Itpe Health & Welfare Fund
IUOE Local 15
J. Crew Group-Tpa
J.M. Smucker Company, The
Jm Family Enterprises
Jmh Health Plan
Jo-Ann Stores, Inc.
John Deere
Johnson & Johnson
JP Farley Corporation
JW Terrill
Kaiser (Northern Califronia)
Kaiser Aluminum Corporation
Kb Holdings/Kay Bee Toys
Keebler Company
Kentucky Laborers District Council
Kenworth Northwest, Inc.





EXHIBIT
B

Key Partners

Key Risk Management Services, Inc

Kraft Foods

La Quinta Inns, Inc.

Laborers Metro Detroit Health

Land O'lakes, Inc.

LBA Healthplans, Inc.

Leahy & Associates, Inc.

Liberty Mutual

Liberty Northwest Insurance Corporation

Life Investors Insurance Company Of America

Lifewell Healthplans

Littleton Group

Liz Claiborne, Inc.

Local Engineers 15

Lone Star Steakhouse

Loomis Company

L'oreal Usa, Inc.

Louisiana Farm Bureau

Mail Boxes Etc

Maksin Management Corporation

Managed Benefits Administrators & Ins.
Consultants

Managed Health Funding Insurance
Administrators

Marsh Advantage

Mca Administrators

Mcdonald's Corporation

Mcgraw-Hill, Inc.

Med Claim Partners, Llc

Medata

Medaudit Services Inc.

Medical Claims Resources

Medical Claims Review Services

Medical Consultants Network

Medical Cost Management

Medical Mutual of Ohio

Medical Savings Insurance Company

Medicor Managed Care

Medipac International

Melane Company

Memorial Integrated Healthcare





Mennonite Mutual Aid

Merchants & Business Men's

Mutual Insurance Company (now known as Liberty Mutual Mid-Atlantic Insurance Company)

Mercy Care Insurance

Meridican Resource Company

Met Life

Metropolitan Life

MGIS

Michaels Stores, Inc.

Mid-American Fire & Casualty Company

Mid-Florida Medical Services, Inc

Midest Security Administrators

Miller Brewing Company

Mitchell International

MMOH

MMSI

Mokan Sheet Metal Workers

Molson Coors Brewing Co

Monterey Bay Clothing Company

Montgomery Management

Montgomery Mutual Insurance Company

Morgan & Franz

Morgan White International Administrators

Morris Associates

Mountain States Administrators

Mountain States Insurance Company

Multiplan, Inc.

Mutual Assurance Administration

Mutual Medical Plans, Inc.

Mutual Of Omaha

Myerson Stevenson Toohey

Nabisco Group Holdings Corp.

NALC Health Benefit Plan

National Benefit Administrators

National Care Network

National Comp Care

National Comp Care ( Tyson )

National Roofing Company, Inc

National Rural Electric Cooperative Assoc.

National Telecommunications Coop. Association





Nationwide Insurance
Nationwide Mutual Insurance Company
NCAS
Nebraska Farm Bureau
Nestle
New England Financial
New England Health Plans
New Era Life Insurance Co
NGS American, Inc.
NHBC
NNSI
Noitu Insurance Trust Fund
Norfolk & Dedham
North American Administrators
North Pacific Insurance Company
Nova Health Systems
NYSUT
ODS
Office Depot, Inc.
Ohio Carpenters
Ohio Casualty of New Jersey, Inc.
Ohio Health Choice
Ohio Mutual Insurance Company
Ohio Security Insurance Company
Olympus Managed Health Care
One Beacon Insurance
Operating Engineers Health & Welfare Trust
Oregon Automobile Insurance Company
Oroweat Baking Co
Oshkosh Truck Corporation
Outback Steakhouse
Outsourced One
Oxford Health Plans
P5 Health Services
PACBLU
Pacific Coast Claims Consultants
Pacific Foundation
Pacificare Health Systems, Inc.
Pacifice Heritage Administrators
Pacmed
Painters District Council #2
Palm Harbor Homes, Inc.





Paradigm Management Services

Paramount Healthcare Inc

PCM, Inc.

Peerless Indemnity Insurance Company

(formerly Atlas Assurance Company of America)

Peerless Insurance Company

Pekin Life Insurance Company

Penn Western Benefits

Pepsi-Cola Company

Pequot Healthcare

Perkins Restaurant & Bakery

Permanent General Insurance Co.

Perrier Group

Personnel Staffing

Petco Animal Supplies, Inc.

Petsmart, Inc

Phelps Dodge

Philip Morris Usa

Physician Benefit Trust

Physicians Mutual Insurance Company

Pier 1 Imports

Pioneer Administrators

Pizza Hut, Inc.

Planned Administrators

Plumbers & Pipefitters, Nv

Plummers Pipefitters Of Nv

Plymouth Rock Assurance Corp

PMCS

Pomco

Prairie States Tpa

Preferred Care

Preferred Medical Claims Solutions

Preffed Medical Management Solutions

Premier Comp Solutions

Principal Financial Group

Prison Health Services

Pro-Claim Plus

Producer's Guild

Professional Benefit Administration

Professional Benefit Services

Professional Claims Administration

Progressive





EXHIBIT
B

http://rpnationalclientlist.blogspot.com/

Protection One

Provider Benefit Plans

Puma Corporation & Subsidiarie

Pupil Benefits Plan, Inc.

Quality Health Management, Llc

Quest Medical Claims

Regional Care, Inc

Resolved Healthcare

Retail First Insurance Company

Retailers Casualty Insurance Company

Retirees Welfare Trust

Reunion Industries

Review Works

Rising Medical Solutions

Risk Administration Resources

RJ Reynolds Domestic Tobacco

Rockford Mutual Insurance Company

Royalty Carpet Mills, Inc.

Rubbermaid Incorporated

Rural Health Plans Initiative

Safeco

Safeco Insurance Company of
America

Safeco Insurance Company of
Illinois

Safeco Insurance Company of
Indiana

Safeco Insurance Company of
Oregon

Safeco Lloyds Insurance Company

Safeco National Insurance Company

Safeco Surplus Lines Insurance
Company

Safety Insurance

SAIF

Salt River Indian Community

San Diego Insurance Company

Sara Lee Corporation

Scot Industries

Scott & White Healthplans

Scottsdale Insurance Company

Screen Actors Guild





Sears Merchandise Group

Secure Health Plans Of Ga

Secureone

Securitas Security Service Inc

Security Administrative Services

Security Health Plan Of W.I.

Sedgwick Claims Management

See's Candies, Inc.

Select Benefit Administrators, Inc.

Selective Insurance Group, Inc .

Self Insured Services Co

Seminole Tribe Of Florida

Sentry Insurance

Servicemaster

Sharp Health Plan

Shorman Solutions

Sierra Health & Life Insurance Company

Significa Benefit Services Fka Erin Group
Administrators

SIHO Insurance Services

SISCO

Skilstaf, Inc.

Smc, Inc.

So. Ca. Risk Management Associates Spooner
Incorporated

Sonoco Products Co

Sonoma Tilemakers Inc.

Source One Computer Corporation

Southern California Pipe Traders

Southern California Risk Management
Association

Southern National Life Insurance

Specialty & Paper Products Health And Welfare

Spectrum Administrators

Spooner Incorporated

Stanislaus Foundation

Stanley Steemer

Starbucks

State Farm

State Of Louisianna Ogb

State-Wide Insurance Company

Stowe Associates





Student Insurance
Student Plans, Inc.
Summit Administrators Services
Summit Consulting, LLC
Summit Insurance Company
Sun Chemical Corporation
Sun-Maid Growers Of California
Sunmed
T.R. Paul Group Services
Tandem Care, Llc
Tbg Administrative Services
Tc3 Health
Teamster Construction Industry
Teamsters Local 14
Teamsters Local 631 Sec Fund
Teamsters Local 995
Texas Farm Bureau
Texas Industries, Inc.
Texas True Choice
The Alliance
The City of Lakeland, FL
The City of North Miami Beach, FL
The City of Plant City, FL
The Claims Trust
The Comptech Group
The Epoch Group
The Guardian
The Hartford
The Hartford Group
The Henry J. Kaiser Family
The Midwestern Indemnity Company
The National Corporation
as Attorney-In-Fact for
National Insurance Association
(underwriting co. in GoAmerica group)
The Netherlands Insurance Company
The Ohio Casualty Insurance    Company
The Pillsbury Co.
The Reny Company
THIPA
Titan Propane
TLC First Administration





TMLIntergov Employee Benfits

Tomgass Timber Trust

Tongass Timber Trust- Alaska Forest Association

Total Managed Care

Toyota

TPA Of Georgia

TQ Consultants

Trans World Airlines Inc.

Travelers Insurance

Travtens Insurance Group

Trissel Graham & Toole

Tristar Risk Management

Tru Services, Inc.

True Course Medical Data Analysis And Claims
Services

Trusteed Plans Service Corporation

Tyson Foods

U.S. Benefits

UICI Administrators

Ulico Insurance

Ultramar Corp

Underwriters Safety & Claims

Unicare

Unified Group Serivces, Inc.

United Artists Theatre Circuit

United Benefits

United Claims Solutions, Llc

UnitedHealthcare/Multiplan, Inc.

Unitrin Auto And Home

Unity Health Insurance

Universal Underwritters Insurance

Upstate Administrative Services

US Foods

USAA

USair, Inc.

Valero, Inc.

Valunet, Llc

Vanguard Services, Inc.

Vermont Managed Care

Vermont Mutual

Viant

Vision Quest





Vista America

Vista Health Plans

Volvo Cars

Washington Employers Trust

Washington Idaho Carpenters

Washington Mutual

Washington Teamsters

Wausau

WEA Trust

Wellcomp

Wells Fargo Alarm Services

West American Insurance Company

Western Benefits

Western Mutual Insurance

Western Teamsters Trust

Westport Benefits

Westport Shipyard, Inc.

Weyco, Inc.

Worcomp Bill Review Services

Workcomp MC/Health Choice Of North West

Missouri

Worldwide Management Care Partners

WPS, Inc.

Writer's Guild

Xerox Corp

York Claims

York Insurance Services Group, Inc.

Zeneks

Zenith Administrators

Zenith Insurance Company



................................................................

Posted by TRPN NATIONAL CLIENT LIST at 12:00
PM          Recommend this on Google



