UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| INNOVA HOSPITAL SAN ANTONIO, L.P. | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 5:13-cv-1089-DAE |
| HUMANA INSURANCE COMPANY and HUMANA HEALTH PLAN OF TEXAS, INC. | § § § § § | |
| Defendants. | § § | |

**DEFENDANTS HUMANA INSURANCE COMPANY AND HUMANA HEALTH PLAN OF TEXAS, INC.'S RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**

Richard G. Foster
State Bar No. 07295100
rfoster@prdg.com
Raj Aujla
State Bar No. 24064846
raujla@prdg.com
Trinity Plaza II
745 E. Mulberry, Suite 450
San Antonio, Texas 78212
Telephone:   (210) 736-3900
Facsimile:   (210) 736-1992

**ATTORNEYS FOR DEFENDANTS,
HUMANA INSURANCE COMPANY and
HUMANA HEALTH PLAN OF TEXAS, INC.**

# **TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY ............................................................................. 1

II. JURISDICTIONAL FACTS ........................................................................................ 2

    A.    The Explanation of Benefits (EOB) for Patients #2 & #3 demonstrate that ERISA coverage determinations are involved here ........................................................ 2

        1.    *Patients #2 & #3 are covered by an ERISA plan* ......................................... 2
        2.    *Payment was partially denied for Patients #2 & #3 because the benefits sought were not covered benefits under the ERISA plans* ........................... 3

    B.    Plaintiff's Original Petition did not identify the Patients at Issue and did not disclose the ERISA plans or coverage determinations at issue; thus, the Humana Defendants timely removed the case ................................................................. 4

III. ARGUMENTS AND AUTHORITIES ......................................................................... 4

    A.    Plaintiff challenges coverage determinations under an ERISA Plan ..................... 4

    B.    Any claim within the scope of ERISA § 502(a) is a federal claim regardless of how the Plaintiff pleads it or tries to disguise it ....................................................... 6

    C.    Plaintiff's claim involving Patients #2 and #3 is within the scope of ERISA § 502(a) because it challenges the Humana Defendants' coverage determinations ......................................................................................................... 9

        1.    *To prevail, Plaintiff will have to prove that the Humana Defendants' coverage determinations were wrong* ........................................................ 10

    D.    The Humana Defendants timely removed this case ............................................. 13

IV. CONCLUSION AND PRAYER ................................................................................ 14

# CASES

*Aetna Health Inc. v. Davila*
   542 U.S. 200 (2004) .................................................................................................. 1

*Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*
   CIV.A. H-05-4389, 2006 WL 1663752 (S.D. Tex. June 13, 2006) ......................... 9, 11

*Bosky v. Kroger Tex., LP*
   288 F.3d 208 (5th Cir. 2002) ................................................................................... 14

*Cohens v. Virginia*
   6 Wheat 264 (1821) ................................................................................................. 1

*Colorado River Water Conservation Dist. v. U. S.*
   424 U.S. 800 (1976) ................................................................................................. 2

*Freeze v. Coastal Bend Foot Specialist*
   Civ. Action No. C-06-481, 2006 WL 3487405  (S.D. Tex. Dec. 1, 2006) .................. 14

*Giles v. NYLCare Health Plans, Inc.*
   172 F.3d 332 (5th Cir. 1999) ..................................................................................... 7

*Ingersoll-Rand Co. v. McClendon*
   498 U.S. 133 (1990) ................................................................................................. 1

*Keith L. Markey, M.D., P.A. v. Aetna Health Inc.*
   SA-11-CA-1075-XR, 2012 WL 695662 (W.D. Tex. Feb. 29, 2012) .......................... 13

*Lone Star OB/GYN Assocs. v. Aetna Health Inc.*
   579 F.3d 525 (5th Cir. 2009) ..................................................................................... 1

*McDonald v.Provident Indem. Life Ins. Co.*
   60 F.3d 234 (5th Cir. 1995) ....................................................................................... 5

*McNeil v. Time Ins. Co.*
   205 F.3d 179 (5th Cir. 2000) ..................................................................................... 5

*Mem'l Health Sys. v. Aetna Health, Inc.*
   730 F. Supp. 2d 1289 (D. Colo. 2010) ..................................................................... 12

*Meredith v. Time Ins. Co.*
   980 F.2d 352 (5th Cir. 1993) ..................................................................................... 5

*Moore v. ARCO Chem. Co.*
    19 F.3d 15, 1994 WL 93451 (5th Cir. Mar. 16, 1994) (per curiam) (unpublished) ....... 4

*Paragon Office Services, LLC v. UnitedHealthGroup, Inc.*
    3:11-CV-2205-D, 2012 WL 1019953 (N.D. Tex. Mar. 27, 2012).................................. 9

*Pilot Life Ins. Co. v. Dedeaux*
    481 U.S. 41 (1987) ........................................................................................................ 1

*Quality Infusion Care Inc. v. Humana Health Plan of Texas Inc.*
    290 Fed. Appx. 671 (5th Cir. 2008) ............................................................................. 8

*Spring E.R., LLC v. Aetna Life Ins. Co.*
    CIV.A. H-09-2001, 2010 WL 598748 (S.D. Tex. Feb. 17, 2010).............................. 7, 8

*Sprint Comm'ns, Inc. v. Jacobs*
    134 S. Ct. 584 (2013) .................................................................................................. 2

## **STATUTES**

29 C.F.R. § 2510.3-l(j)(l)-(4) ........................................................................................ 5

# I. <u>INTRODUCTION AND SUMMARY</u>

The Supreme Court has consistently ruled that plaintiffs cannot artfully dodge ERISA.[1]  When payment of ERISA benefits are at issue, a plaintiff cannot "duplicate[], supplement[], or supplant[]" the remedies in ERISA § 502(a) by characterizing the claim as something else.[2]  To allow a plaintiff to do so would contravene Congressional intent.[3]

In this case, Plaintiff, Innova Hospital San Antonio, L.P. ("Plaintiff") seeks recovery on numerous medical claims, at least one of which involves a coverage determination under an ERISA plan.  Under the controlling test for complete preemption set forth in *Aetna Health Inc. v. Davila,* 542 U.S. 200 (2004), claims involving coverage determinations like the ones Plaintiff alleges in this case are completely preempted by ERISA. The Fifth Circuit expressly recognized this fundamental principle in *Lone Star OB/GYN Assocs. v. Aetna Health Inc.,* 579 F.3d 525 (5th Cir. 2009), where the Court held that an assignee medical provider's claim pertaining to the right of payment is completely preempted by ERISA.

Although it is true that federal courts have limited jurisdiction, they "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia,* 6 Wheat. 264 (1821).  Stated differently, "[j]urisdiction existing, th[e Supreme] Court has cautioned, a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" *Sprint Comm'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) (quoting *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800,

---

[1] The Employee Retirement Income Security Act ("ERISA") of 1974, as amended, 29 U.S.C. §§ 1001-1461.
[2] *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004); *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 145 (1990); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56 (1987).
[3] *Davila,* 542 U.S. at 208·09; *Pilot Life,* 481 U.S. at 45-46, 52-57 (recognizing Congress' "intention that all suits ... asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § 502(a)").

817 (1976)).  Simply put, there is federal jurisdiction here, and this Court must exercise it.

## II. JURISDICTIONAL FACTS

**A.   The Explanation of Benefits (EOB) for Patients #2 & #3 demonstrate that ERISA coverage determinations are involved here.**

Plaintiff attempts to characterize this case as a dispute over the rate of payment for services provided by Plaintiff to the Humana Defendants' alleged members. Plaintiff goes so far in its attempt to affirmatively allege that its claims do not implicate questions about coverage under the specific ERISA plans at issue.[4]  As established by the Humana Defendants' Notice of Removal and reiterated again in this Response, Plaintiff's characterization of its claims is not accurate.

### 1.   *Patients #2 & #3 are covered by an ERISA plan.*

Plaintiff's claims against the Humana Defendants include claims for medical benefits pertaining to Patients #2 and #3[5] that involve coverage determinations under the terms of an ERISA plan.[6] Patient #2 was an eligible participant in an employee welfare benefit plan established and maintained by El Centro Del Barrio (the "El Centro Del Barrio Plan").[7] The El Centro Del Barrio Plan provides, among other benefits,

---

[4] Plaintiff's Original Petition, p.1, attached to the Humana Defendants' Notice of Removal as Exhibit C-1. [Docket No. 1-4]
[5] Humana is protecting the identities of Patients #2 and #3 by not mentioning them in this Motion, but information about these patients was filed under seal as part of Exhibit G attached to the Humana Defendants' Motion for Leave to File Sealed Exhibits ("Motion for Leave") [Docket No 3], which this Court granted on December 19, 2013. [Docket No. 5].
[6] True and correct copies of data pertaining to Patient #2 are attached to the Humana Defendants' Motion for Leave as Exhibit G-7.
[7] Exhibit A (Affidavit of Laura Nelson); *see also* Exhibit G attached to the Humana Defendants' Motion for Leave.

medical benefits to eligible employees and their dependents.[8]  Patient #3 was an eligible participant in USAA's self-funded employee benefit plan.[9]

### 2. Payment was partially denied for Patients #2 & #3 because the benefits sought were not covered benefits under the ERISA plans.

Patient #2's EOB shows that benefits were denied because the ERISA benefits sought by Plaintiff were not covered as they exceeded coverage for the Maximum Allowable Fee as defined in Patient #2's Plan Document.[10]  Patient #3's EOB shows that benefits were denied, in part, because of Patient #3's Coinsurance obligations under the plan.

Accordingly, Plaintiff's claims for benefits in this case include at least two claims which directly implicate questions about coverage as illustrated by its claim pertaining to Patients #2 and #3.  As to Patient #2, HHP Texas determined that Plaintiff had no right to payment on $329,116.21 of the claim because Patient #2's Plan excluded those charges as they exceeded the "Maximum Allowable Fee (MAF)."[11]  With respect to Patient #3, Plaintiff claims that it was underpaid by $320,232.40 as of March 20, 2012.[12] According to Patient #3's EOB, she had Coinsurance responsibilities in the amount of $349,287.53.[13]

Thus, Plaintiff's state law claims for alleged underpayments are really disguised claims which implicate coverage determinations under the terms of Patient #2 and #3's ERISA Plans.

---

[8] Exhibit G-6 to Motion for Leave, part (1 of 4), pp. 12-19 ("Understanding Your Coverage"), pp. 20-37 ("Schedule of Benefits") and pp.38-61 ("Covered Health Services").
[9] Exhibit B.
[10] Exhibit G-7 attached to the Humana Defendants' Motion for Leave..
[11] *Id.*
[12] Plaintiff's Original Petition, p. 24, ¶ 59.
[13] Exhibit G-3 attached to the Humana Defendants' Motion for Leave.

**B.   Plaintiff's Original Petition did not identify the Patients at Issue and did not disclose the ERISA plans or coverage determinations at issue; thus, the Humana Defendants timely removed the case.**

Plaintiff did not attach any claims information to its original petition, did not provide the identity of the Patients at issue, and further did not disclose that the health plan benefits it is seeking from the Humana Defendants arose from ERISA plans.  In fact, Plaintiff did not even provide the names of the Patients at issue until Friday, November 1, 2013 when Plaintiff's counsel sent the Humana Defendants' counsel an email attaching limited claims information and the identity of the Patients at issue.[14]

Only then, through a review of their own internal records, were the Humana Defendants able to ascertain the nature of Plaintiff's ERISA claims. Thus, Plaintiff still has not provided any information to the Humana Defendants sufficient to trigger the Humana Defendants' removal deadline; however, assuming for argument's sake only that the November 1, 2013 limited claims information was sufficient to trigger the 30 day deadline (it was not), the Humana Defendants timely removed this case on Monday, December 2, 2013.

### III. ARGUMENTS AND AUTHORITIES

**A.   Plaintiff challenges coverage determinations under an ERISA Plan.**

Plaintiff does not dispute the fact that each of the four patients at issue are ERISA plan beneficiaries; thus, in addition to the proof attached the Humana Defendants' Notice of Removal and this Response, that fact must be taken as true, as a matter of law.[15]  As set forth in the Plan Documents attached to the Notice of Removal

---

[14] Exhibit C (Affidavit of Raj Aujla).
[15] *See Moore v. ARCO Chem. Co.,* 19 F.3d 15, 1994 WL 93451 (5th Cir. Mar. 16, 1994) (per curiam) (unpublished) (holding that factual allegations in a notice of removal are considered admitted when left unchallenged); *Bobby Jones Garden Apartments, Inc. v. Suleski,* 391 F.2d 172, 175-76 (5th Cir. 1968)

and incorporated by reference into this Response, the USAA and El Centro Del Barrio private employer-sponsored plans are indeed ERISA plans.[16]

A particular plan qualifies as an ERISA plan if it (1) exists; (2) falls within the safe harbor exclusion of 29 C.F.R. § 2510.3-l(j)(l)-(4); and (3) is established or maintained by an employer for the purpose of benefitting the plan participants.[17] By way of example, the El Centro Del Barrio and USAA Plans satisfy all three factors.

> 1. A "plan" exists if, from the surrounding circumstances, "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits."[18]

All of this information is available to El Centro Del Barrio and USAA Plan beneficiaries, as evidenced in the attached plan documents given to them. These documents describe the medical benefits available,[19] the class of beneficiaries *(i.e.,* the employees and their dependents),[20] and the claims procedures for receiving benefits and the claims appeal processes.[21]

> 2. For a plan to fall outside the safe harbor and be exempt from ERISA, (1) an employer must not contribute to the plan; (2) participation in the plan must be voluntary; (3) the employer's role must be limited to collecting premiums and remitting them to the insurer; and (4) the employer must receive no profit from the plan.[22]

---

(holding that the result of a plaintiff's failure to challenge factual allegations in a notice of removal "is to admit all the allegations in the [defendant's] petition for removal").
[16] Exhibits A & B (*See also* Exhibit G attached to the Humana Defendants' Motion for Leave).
[17] *See McNeil v. Time Ins. Co.,* 205 F.3d 179, 189 (5th Cir. 2000); *McDonald v.Provident Indem. Life Ins. Co.,* 60 F.3d 234, 235-36 (5th Cir. 1995); *Meredith v. Time Ins. Co.,* 980 F.2d 352, 355 (5th Cir. 1993).
[18] *McNeil,* 205 F.3d at 189 (quoting *Meredith,* 980 F.2d at 355); *McDonald,* 60 F.3d at 236.
[19] Exhibit G-6 to the Humana Defendants' Motion for Leave, part (1 of 4), pp. 12-19 ("Understanding Your Coverage"), pp. 20-37 ("Schedule of Benefits") and pp.38-61 ("Covered Health Services"); Exhibit B-1, p. 19-28.
[20] Exhibit G-6 at part (2 of 4) pp. 68-74; Exhibit B-1, pp. 3-4.
[21] Exhibit G-6 at part (2 of 4) pp. 88-94; Exhibit B-1, pp. 43-45.
[22] *Meredith v. Time Ins. Co.,* 980 F.2d 352, 355 (5th Cir. 1993) (holding that a plan must meet all four of the elements to be exempt from ERISA).

Here, El Centro Del Barrio pays eighty percent (80%) of the insurance premiums charged for its enrolled employees. Further, El Centro Del Barrio is the ERISA Plan Administrator Plan.[23] In addition, USAA self-funds its employee health benefits plan.[24]

3. An employer establishes or maintains the plan for the purpose of benefitting the plan participants.

As evidenced by the group application and plan documents, the El Centro Del Barrio Plan was established by it for its respective employees, and USAA self-funds the health benefits for its employees.[25] Thus, the El Centro Del Barrio and USAA Plans are governed by ERISA.

**B. Any claim within the scope of ERISA § 502(a) is a federal claim regardless of how the Plaintiff pleads it or tries to disguise it.**

When an ERISA plan is in issue, all "causes of action within the scope of the civil enforcement provisions of [ERISA] § 502(a) [are] removable to federal court."[26] "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."[27] A state law complaint is within the scope of § 502(a) and is completely preempted if:

1. an individual, at some point in time, could have brought her claim under ERISA § 502(a)(l)(B); and

2. there is no other independent legal duty that is implicated by a defendant's actions.[28]

Plaintiff's argument that the face of its complaint does not allege a federal question misses the mark and is not dispositive of the jurisdictional issue before the Court.

---

[23] Exhibit G-6 to the Humana Defendants' Motion for Leave, p. 4 of 21.
[24] Exhibit B-1, p. 1; *see also* Exhibit G attached to the Humana Defendants' Motion for Leave.
[25] *Id.*
[26] *Davila*, 542 U.S. at 209.
[27] *Id.* (quoting *Metro. Life*, 481 U.S. at 64-66).
[28] *Davila*, 542 U.S. at 210.

Under the complete preemption doctrine, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is *necessarily* federal in character," and the case may be removed even if no federal claim is asserted in the complaint.[29]  Section 502(a) of ERISA is one of those provisions "with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."[30]  To establish removal jurisdiction, the Humana Defendants need not establish that all of Plaintiff's claims are preempted by ERISA. All the Humana Defendants have to do "is demonstrate a substantial federal claim, *e.g.,* **one completely preempted** by ERISA."[31]

In particular, the EOBs pertaining to Patients #2 and #3 include claims meet this standard and Plaintiff seeks relief on state court causes of action as an assignee of ERISA plan beneficiaries for recovery of denied ERISA benefits.  For example, Plaintiff repeatedly asserts that it took an "irrevocable assignment" and has standing to sue the Patients' ERISA health plans at issue in this case.[32]  Therefore, the Patients could have, prior to their assignment to Plaintiff, brought the same claims against the Humana Defendants and no other independent legal duty arises due to Plaintiff's standing as the Patients' assignee.[33]  This point is emphasized by the fact that Plaintiff is suing the Humana Defendants for alleged:

---

[29] *Giles v. NYLCare Health Plans, Inc.,* 172 F.3d 332, 336 (5th Cir. 1999) (quoting *Metro. Life,* 481 U.S. at 64-65) (emphasis added).
[30] *Davila,* 542 U.S. at 209 (quoting *Metro. Life,* 481 U.S. at 65-66).
[31] *Giles,* 172 F.3d at 337 (emphasis added).
[32] Plaintiff's Original Petition, p. 17, ¶ 41, p. 22, ¶ 54, and p. 36, ¶ 92.
[33] *Springer E.R.,LLC v. Aetna Life Ins. Co.*, Civ. Action No. H-09-2001, 2010 WL 598748, at *2 (S.D. Tex. Feb. 17, 2010) ("A medical care provider has no independent standing to bring an action under Section 502(a) of ERISA, but can enjoy derivative standing as an assignee of plan benefits. Under this theory, the medical provider stands in the shoes of the ERISA beneficiary to assert its rights under the plan terms, rather than asserting some independent legal duty owed directly to the healthcare provider."); *Lone Star,*

> [M]aterial breaches of . . . [t]he policies of insurance and / or health plans which covered the patients, which the HOSPITAL has standing to sue for, by reason of the irrevocable assignments which each of the patients made to the HOSPITAL before or at the time the patients were being admitted to the HOSPITAL.[34]

Accordingly, Plaintiff directly seeks benefits as an assignee of the ERISA plan members at issue in this case, and must proceed under the procedures established by § 502(a).

In addition, unlike the line of cases distinguishing between "right of payment" and "rate of payment" determinations based on an insurer and a provider's Provider Agreement, there is no such direct contractual relationship in this case. Plaintiff admits as much in its Original Petition, relying instead on the allegation that it is a party to an alleged network to which the Humana Defendants have access.

Thus, despite Plaintiff's claim to the contrary, there is no express contractual relationship between the Humana Defendants and Plaintiff that gives rise to an independent legal duty between Plaintiff and the Humana Defendants as contemplated in *Lone Star*. *See Spring E.R., LLC v. Aetna Life Ins. Co.*, CIV.A. H-09-2001, 2010 WL 598748, at *6 (S.D. Tex. Feb. 17, 2010) ("Thus, the decision in [the *Lone Star*] case arose from a wholly ***separate agreement between the insurance company and the healthcare facility***. Here, there is no such Provider Agreement between Plaintiff and Defendants, as made abundantly clear by the fact that Plaintiff's contractual claim is one under implied contract. However, as discussed above, the implied contract at issue here is limited by the terms of the ERISA plan, and therefore not independent.") (emphasis added).

---

579 F.3d at 533 n.3 ("A healthcare provider suing on the basis of assignment of ERISA rights, benefits or claims from a plan member must proceed under the procedures established by § 502(a), as the provider is seeking to enforce the terms of the plan." (quoting *Quality Infusion Care Inc. v. Humana Health Plan of Texas Inc.*, 290 Fed. Appx. 671, 680 (5th Cir. 2008)).
[34] Plaintiff's Original Petition, p. 36 ¶ 92.

The same is true in this case, as Plaintiff's alleged contractual claims arise not from a Provider Agreement with the Humana Defendants, but instead derive from, and are dependent on, the ERISA plans under which Plaintiff seeks benefits in this case.[35] Numerous courts have denied motions for remand and exercised federal jurisdiction in similar instances and this court should do likewise. *E.g., Paragon Office Services, LLC v. UnitedHealthGroup, Inc.*, 3:11-CV-2205-D, 2012 WL 1019953, at 7* (N.D. Tex. Mar. 27, 2012) *reconsideration denied*, 3:11-CV-2205-D, 2013 WL 5477145 (N.D. Tex. Oct. 2, 2013) ("Thus although plaintiffs frame their claim in terms of a breach of an implied contract claim, it is completely preempted if the right to payment nonetheless turns on the terms of an ERISA benefit plan and not an independent obligation."). The same is true here, and Plaintiff's Motion for Remand must be denied.

**C.    Plaintiff's claim involving Patients #2 and #3 is within the scope of ERISA § 502(a) because it challenges the Humana Defendants' coverage determinations.**

In *Lone Star,* the Fifth Circuit applied *Davila* to a health care provider's suit over claims denials based on a Provider Agreement.[36] Lone Star sued Aetna under the Texas Prompt Pay Act ("Prompt Pay Act"), alleging that Aetna had not paid Lone Star's medical claims at the rates established in the parties' Provider Agreement and within the time period required under the Prompt Pay Act, and Aetna removed the case.[37]

---

[35] *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, CIV.A. H-05-4389, 2006 WL 1663752, at *8 (S.D. Tex. June 13, 2006) ("AITS is challenging Aetna's determination that certain charges were in excess of 'reasonable and customary' fees charged, or were duplicative of charges that had already been paid. Resolving this dispute requires a determination of N.D.'s rights and benefits due under the Kroger ERISA Plan. The Kroger Plan's obligation to pay for the services AITS provided N.D. depends on, and derives from, the Kroger ERISA Plan terms. Unlike *Pascack Valley Hospital,* in which a dispute over the extent of coverage could be resolved solely by reference to a managed-care contract independent of the ERISA Plan, **resolving the dispute here is possible only by reference to and interpretation of the Kroger ERISA Plan**.") (emphasis added).

[36] Here, however, there is no Provider Agreement similar to the contract between Plaintiff and Aetna in *Lone Star*. Nevertheless, *Lone Star* is instructive and emphasizes why Plaintiff's state law claims are within the scope of § 502 and are completely preempted.

[37] *Lone Star,* 579 F.3d at 528.

Defendants' Response and Brief in Opposition to Plaintiff's Motion for Remand                 9

After considering whether the plaintiff's claims were preempted, the Fifth Circuit ruled that where the provider's claim puts a ***coverage determination*** under an ERISA plan into issue, ERISA is implicated. *Lone Star,* 579 F.3d at 530-31 (noting that coverage determinations under the terms of ERISA plans, such as what is "medically necessary" or a "Covered Service," fall within ERISA). Simply put, claims like the ones asserted by Plaintiff for alleged underpayments that implicate benefit and "coverage determinations under the terms of the relevant plan" are preempted by ERISA. *See Id.* at 532 *("Davila* was thus concerned with coverage and benefit determinations."). In this case, Plaintiff alleges an underpayment that implicates coverage determinations under the ERISA health plans for Patients #2 and #3.  Thus, Plaintiff's state law claim for Patients #2 and #3 fail this test for remand.

    **1.    To prevail, Plaintiff will have to prove that the Humana Defendants' coverage determinations were wrong.**

        **a. Patient #2**

As shown in the EOB for Patient #2,[38] payment for part of Plaintiff's claim for Patient #2 was denied under the terms of the El Centro Del Barrio Plan because the charge billed by Plaintiff as an out-of-network provider exceeded the Maximum Allowable Fee ("MAF") under Patient #2's Plan.  Here, Patient #2's Plan, not a Provider Agreement, expressly determines what benefits are covered and what benefits are subject to exclusion because they are in excess of the MAF.  In particular, Patient #2's Plan states that "[b]enefits are payable only if services are considered to be a *covered expense* . . . . [t]he benefit payable for *covered expenses* will not exceed the *maximum allowable fee(s).*"[39]

---

[38] Exhibit G-7 attached the Humana Defendants' Motion for Leave.
[39] Exhibit G-6, part 3 of 4, p. 156.

Accordingly, charges in excess of the MAF as defined in the Plan and set forth in Patient #2's EOB are not *covered expenses* under the plan, and Plaintiff has no right to payment for the provision of services in excess of the MAF. Thus, Plaintiff's claim for health plan benefits relating to Patient #2 does not merely implicate the rate of payment owed under an alleged Provider Agreement; instead, whether the Humana Defendants breached any alleged contract with Plaintiff (or with Patient #2) depends entirely on whether the charges Plaintiff seeks were covered under the El Centro Del Barrio Plan. *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, CIV.A. H-05-4389, 2006 WL 1663752, at *9 (S.D. Tex. June 13, 2006) ("Although AITS frames the breach of contract claim as a claim for breach of an independent contract generated with Aetna, that claim depends on whether the charges were covered by the Kroger Plan. The breach of contract issue does not merely implicate the Kroger Plan; rather, whether Aetna breached the purportedly independent contract wholly depends on the Kroger Plan's 'Generally Excluded Charges' and 'Eligible Charges' provisions. AITS's breach of contract claim does not enforce an independent legal duty. The claim is preempted.").

Here, Plaintiff seeks recovery for an alleged underpayment of $237,515.46 on its state law breach of contract, promissory estoppel, and quantum meruit claims alleged in connection with medical care provided to Patient #2.[40] Patient #2's EOB shows that $329,116.21 of the $392,603.77 claim was excluded because it was not a covered expense under the Plan's MAF provisions. As such, Plaintiff seeks ERISA benefits that are not covered under the Plan. That is precisely the type of claim the Fifth Circuit has determined is completely preempted under *Davila*.

---

[40] Plaintiff's Original Petition, p. 21 ¶ 51.

### b. Patient #3

Plaintiff also seeks recovery for an alleged underpayment arising out of medical care allegedly provided to Patient #3.[41] Plaintiff alleges that a $522,361.54 payment that was made by "Humana" in connection with medical care provided to Plaintiff was "$320,232.40" less than the amount the Plaintiff was entitled to receive.[42] The EOB pertaining to Patient #3 indicates that $349.287.53 of the claim was not covered under the USAA Plan, as that amount reflected Patient #3's coinsurance responsibility.

Thus, Plaintiff's claim of an alleged underpayment with respect to Patient #3 implicates a coverage determination under the USAA Plan that wholly depends on the terms of coverage under such Plan – and not on any alleged independent contractual duty. *Mem'l Health Sys. v. Aetna Health, Inc.*, 730 F. Supp. 2d 1289, 1296 (D. Colo. 2010) ("The first two patients, identified by the initials C.S. and D.M., involved coverage determinations based on members' coinsurance responsibilities for coinsurance, deductibles, and co-payments. Plaintiff concedes these are coverage determinations under an ERISA plan."). Moreover, Plaintiff has no independent basis for recovery of the amounts designated as coinsurance because the alleged network agreement it claims to seek recovery under expressly excludes such amounts from any recovery to which Plaintiff is allegedly entitled from the Humana Defendants in this case.[43]

Thus, Plaintiff's breach of contract, promissory estoppel, and quantum meruit claims with respect to Patient #3 are exactly the type of claims subject to complete preemption under ERISA § 502. *Davila*, 542 U.S. at 214 ("[R]espondents bring suit only

---

[41] *Id.* at p. 24, ¶ 59.
[42] Exhibit G-3 attached to the Humana Defendants' Motion for Leave. The EOB indicates that a $289,322.94 discount was applied to the claim. Although Plaintiff does not expressly state it is seeking recovery of Patient #3's Coinsurance amount, simple math indicates that Plaintiff's complaint of an underpayment with respect to Patient #3 is based in part on Patient #3's coinsurance responsibilities under the USAA Plan.
[43] Plaintiff's Original Petition, p. 8, ¶ 19.

to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA."). Accordingly, this Court should deny Plaintiff's Motion.

**D. The Humana Defendants timely removed this case**

Plaintiff argues that the Humana Defendants should have removed this case within 30 days of service of Plaintiff's Original Petition. However, Plaintiff's position must be rejected as Plaintiff's Original Petition failed to even name the individual patients at issue. Further, Plaintiff did not provide any claims information regarding the fact Plaintiff's claims arose out of treatment to ERISA plan members and implicated at least two ERISA coverage questions as set forth above. Thus, the face of Plaintiff's complaint did not render it removable to this court because the Humana Defendants had no way of ascertaining whether Plaintiff's claims were preempted by ERISA at the time the case was filed.

Simply stated, the law does not require the Humana Defendants to guess whether the case is removable when Plaintiff did not even identify the patients at issue. As such, the 30 day removal deadline "did not begin to run when [the Humana Defendants were] served with [Plaintiff's] petition." *Keith L. Markey, M.D., P.A. v. Aetna Health Inc.*, SA-11-CA-1075-XR, 2012 WL 695662, at *4 (W.D. Tex. Feb. 29, 2012). In fact, it was not until November 1, 2013 that the Humana Defendants were provided with the identity of the patients at issue and very limited claims information pertaining to those patients.[44] The limited information provided on November 1, 2013 did not make it "unequivocally clear and certain" that the case was removable to federal court, as

---

[44] Exhibit C.

required by the Fifth Circuit to trigger the 30-day removal time limit. *Markey*, 2012 WL 695662, at *4 (quoting *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002).

However, even assuming for argument's sake only that the receipt of the limited information on November 1, 2013 triggered the Humana Defendants' 30-day time limit (it did not), the Humana Defendants timely removed this case because the removal was filed on Monday, December 2, 2013, the first non-weekend day after the expiration of 30 days from the date the Humana Defendants' received the limited claims information on November 1, 2013. *E.g., Freeze v. Coastal Bend Foot Specialist*, Civ. Action No. C-06-481, 2006 WL 3487405, at *2 (S.D. Tex. Dec. 1, 2006) (noting that "Federal Rule of Civil Procedure 6(a) applies to 'any applicable statute,' and numerous courts have applied Rule 6(a) to determine the proper deadline for removal under 28 U.S.C. § 1446(a). . . . In this case, thirty days after September 28, 2006 fell on a Saturday (October 28, 2006). The next non-weekend day was Monday, October 30, 2006. Accordingly, pursuant to Federal Rule of Civil Procedure 6[(a)], TrailBlazer timely filed its notice of removal on Monday, October 30, 2006, within the deadline set by 28 U.S.C. § 1446(b).").

Accordingly, the Humana Defendants removal was timely filed and this Court has federal subject matter jurisdiction.

## IV. CONCLUSION AND PRAYER

Regardless of how Plaintiff characterizes its theories of recovery, it is disputing payment on at least two assigned medical claims that were denied by the Humana Defendants for coverage reasons under the terms of an ERISA plan. Such a claim implicates a *right* to payment under the ERISA plan and, therefore, falls directly within the scope of the civil enforcement provision of ERISA. Under controlling U.S. Supreme Court and Fifth Circuit authority, the claim is completely preempted by ERISA. Thus, the

Humana Defendants properly removed the case to this Court on federal question jurisdiction, and they respectfully request that the Court deny Plaintiff's Motion for Remand in its entirety.

Respectfully submitted,

By: */s/ Richard G. Foster*
Richard G. Foster
State Bar No. 07295100
rfoster@prdg.com
Raj Aujla
State Bar No. 24064846
raujla@prdg.com
Trinity Plaza II
745 E. Mulberry, Suite 450
an Antonio, Texas 78212
Telephone:   (210) 736-3900
Facsimile:    (210) 736-1992

**ATTORNEYS FOR DEFENDANTS,
HUMANA INSURANCE COMPANY and
HUMANA HEALTH PLAN OF TEXAS, INC.**

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause in accordance with Rule 5(b), Federal Rules of Civil Procedure, on this 21st day of January, 2014.

*Via Electronic Mail*
Randal L. Payne
Michael J. Dulaney
SULLINS, JOHNSTON, ROHRBACH & MAGERS
2200 Phoenix Tower
3200 Southwest Freeway
Houston, Texas 77027

*/s/ Richard G. Foster*
Richard G. Foster